HAND v. SUPREME COUNCIL OF THE ROYAL ARCANUM.

(Supreme Court, Appellate Division, Second Department. November 21, 1899.)

MUTUAL BENEFIT INSURANCE—SUSPENSION—RETURN OF ASSESSMENTS PAID.

　　In an action on a benefit certificate, it appeared that deceased was in arrears in his assessments and was suspended; that shortly before such suspension deceased had deposited money to pay his assessments in a box maintained by defendant for that purpose; that, upon defendant's collector finding the money, he returned it, with a letter, to deceased, informing him of his suspension, and that the money could not be received. Deceased accepted the money so returned, and took no definite action towards reinstatement, and died about four months after. *Held* that, by voluntarily accepting the assessments returned, deceased acquiesced in his suspension, and became estopped from denying same.

Appeal from trial term, Kings county.

Action by Lizzie Hand against the Supreme Council of the Royal Arcanum. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

S. M. Lindsley, for appellant.

Peter R. Gatens, for respondent.

CULLEN, J. This action is brought to recover the amount of a benefit or insurance upon the life of the plaintiff's husband, issued by the defendant, a fraternal mutual assessment society organized under the laws of Massachusetts. In 1894 the plaintiff's husband became a member of the defendant society, and received the certificate which is the subject of this suit. He continued such member until July, 1897. In the latter year the following assessments were imposed upon him: No. 242, the time for the payment of which expired on April 30th; No. 243, payable on May 31st; No. 244, on June 14th; No. 245, on July 1st; and No. 246, on July 31st. Notices of these assessments were properly given to the deceased, who did not pay, or attempt to pay, any of them until July. The first three assessments, Nos. 242, 243, and 244, were advanced by the collector of the subordinate lodge or council of which Hand was a member. The evidence shows that the assessments were paid by members either to the collector personally or by deposit in certain lock boxes placed for the purpose in stores or shops, from which the money was afterwards taken by the collector. On June 30th or July 1st the deceased caused to be deposited in a lock box the amount of the first four assessments. The constitution of the defendant provided that any member failing to pay an assessment within the prescribed time of 30 days should stand suspended from the order and all benefits therefrom, and that the collector should immediately notify the regent of such suspension. On July 2d the collector of the council notified the regent of the defendant that Hand had failed in his payments and stood suspended. Afterwards the collector went to the lock box, and found therein Hand's pass book and deposit. Thereupon he wrote the deceased this letter:

"Brooklyn, July 14, 1897.

"Mr. T. J. Hand—Dear Sir: I regret exceedingly that I could not accept the money left at Lenz's in payment of your dues and assessments. I notified you several times of being in arrears, but no notice was taken of it, till finally I had no option but to suspend you. You can get your money by calling at Lenz's for it. Perhaps you may like to know how and at what expense you can get back again. Make application for reinstatement, pass another medical examination ($2.50), and then pay all dues, fines, and assessments, and you will be O. K. The sooner you do this the better. We meet on Friday, July 16th. Apply for reinstatement to Secretary M. E. Doyle, 228 South Fourth St.

"Yours, truly,                                        E. D. Terbell."

On the receipt of this letter, Hand sent to Lenz and received the money which had formerly been paid in on his account. He had some conversation with the secretary of the council, in which he

stated that he would apply for reinstatement as authorized by the
by-laws of the defendant, but he took no action in this direction,
nor did he pay or tender assessment No. 246. Nothing further
passed between the parties, and in November, 1897, Hand died.

We do not think it necessary to follow the counsel in their dis-
cussion as to the effect of the voluntary payments made by the col-
lector on account of Hand's assessments, or whether they inured to
the latter's benefit or not, as we think that the action of the de-
ceased in accepting the return of the assessments precludes the
plaintiff from maintaining this action. Under the evidence in this
case, of the custom and dealing between the parties, the deposit of
money in the lock box was not a mere tender, but actual payment,
if the member was not in default at the time. The case is therefore
not the same as if Hand had tendered the money to the collector,
and the latter had refused to receive it. In making the tender,
the member would do all that it would be within his power to do.
But here the collector had taken the money from the box, though
he declined to retain it. As a matter of fact, he had it, and must
have retained it, unless the deceased had voluntarily received it back.
In this situation the collector wrote the deceased, informing him of
his suspension and refusing to accept the payment. After receiving
this letter, the deceased sent for and obtained the money. We think
that by this action he acquiesced in the collector's claim of his sus-
pension, whether that claim was right or wrong, and was estopped
from asserting to the contrary. He could not be a member in good
standing unless he had paid his assessments in time. If he had
paid the assessments in time, then the money he had paid was the
defendant's, and he had no right thereto. The collector did not
offer to return the money to him as a gratuity or a loan, but solely
on the ground that it was paid too late. While there was no tech-
nical accord and satisfaction between the parties, still the principle
controlling accord and satisfaction seems to us entirely applicable
to the present case. In Hills v. Sommer, 53 Hun, 392, 6 N. Y. Supp.
469, a dispute arising between vendor and vendee as to the amount
of a claim, the latter sent to the former a draft in payment. It was
held that the party receiving the draft was bound either to reject
it, or, by accepting it, to accede to the vendee's terms. The same
principle was held in Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E.
715; Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034; Logan v. David-
son, 18 App. Div. 355, 45 N. Y. Supp. 961. We can see no equity or
justice in a rule that would permit the deceased to take this money
by his own affirmative action, and at the same time, through him-
self or his representative, assert a claim against the association.
The positions are entirely inconsistent, and when the deceased took
this money he made his election to accede to the defendant's claim
that he was in default and suspended.

The judgment should be reversed, and a new trial granted, costs
to abide the event. All concur.