ELIZABETH WATKINS, Respondent, v. BROTHER-
HOOD OF AMERICAN YEOMEN, Appellant.

Kansas City Court of Appeals, April 5, 1915.

1. **FRATERNAL BENEFICIARY ASSOCIATIONS: Nonpayment of
Dues: Forfeiture: Waiver.** Where a fraternal beneficiary as-
sociation left the time and manner of collecting the dues so
entirely within the control of the local secretaries as to be
unable to know whether dues were being paid promptly or not,
then by its own methods it has put the local secretaries in the
very place and stead of the company itself regardless of any
question whether they should be so regarded if the facts were
otherwise.

2. ———: ———: ———: ———. In this case the evidence is
*held* sufficient to justify the triers of fact in finding that the as-
sociation itself knew of the long continued nonobservance of the
by-laws as to prompt payment of dues. The law will not permit
an insurance company, even a fraternal mutual organization, to
accept dues or premiums from its members as if the insurance
was in force, and then, when death occurs, refuse payment on
the ground that the failure to pay promptly forfeited the insur-
ance. If the company desires to hold the member to a strict
observance of the by-laws when it is called upon to pay, it must
observe them strictly itself when the money is coming its way.
Otherwise the forfeiture is waived.

3. ———: ———: ———: ———: **Retention of Dues After
Notice: Jury Question: Burden of Proof.** Whether prompt
tender of the dues, paid after they were due, was made, was a
question for the jury. And if an insurance company, after
knowledge of the payment of dues while they were delinquent,
retains the money so paid, the forfeiture arising from the
insured's failure to pay promptly is waived. And the burden
is on the insurer to prove forfeiture.

4. ———: ———: ———: **Knowledge of Insured Immaterial.** If
the evidence is sufficient to show waiver on the part of the one
against whom it is marked, it is not necessary that the insured
knew of it.

5. ———: **Specification of Amount in Policy.** It is not necessary
to decide in this case whether a fraternal beneficiary associa-
tion doing business under Sec. 7109, R. S. 1909, is or is not
exempt from section 6952 requiring certain companies to
specify the exact sum of money they promise to pay upon such
contingency insured against. In this case the policy does

specify the exact amount it would pay in case the insured died within a certain time which death occurred within that time.

6. **PLEADING: Sworn Copy of Instrument Sued on.** Although the statute, Sec. 1844, R. S. 1909, seems to require the copy of the instrument sued on to be verified by the party and not by the attorney, yet where the latter is done, and the answer admits the execution and delivery of the instrument and no objection is made to the omission to file the same instrument before pleading to the merits and going to trial, the defects are waived.

Appeal from Jackson Circuit Court.—*Hon. A. C. Southern*, Judge.

AFFIRMED (*conditionally*).

*Ed. E. Aleshire* and *E. C. Corry* for appellant.

(1) The court erred in permitting plaintiff to introduce any evidence for the reason that the certificate sued on was never filed in the court and no legal verified copy of the same filed. The pretended verified copy was sworn to by John G. Park, one of plaintiff's attorneys (Sec. 1841, R. S. 1909, does not permit this). Gewe v. Hanszen, 85 Mo. App. 136. (2) The court at the close of all the evidence erred in overruling defendant's demurrer and directing a verdict for defendant. The entire evidence shows undisputed that the assured's brother-in-law was allowed to pay the $7.20 because Mr. Records, the correspondent, relied upon his statement that they had September receipt and that his brother-in-law was in good health. The following authorities practically cover every phase of the case: Fraser v. Aetna Life Ins. Co., 114 Wis. 510; Richards v. Maine Benefit Assn., 95 Me. 99; Lewis and wife v. Phoenix Mutual, 44 Conn. 72; Harris v. Equitable Life, 64 N. Y. 196; Garbutt v. Citizens Life Endowment Assn., 84 Ia. 293; Scoville et al. v. Royal Highlanders, 92 N. W. 206; Smith v. Woodmen of the World, 179 Mo. 119; Warner v. Modern Woodmen, 119 Mo. App. 222; Boward v. Bankers Union, 94 Mo.

App. 442; Porter v. Loyal Americans of the Republic, 167 S. W. 578; Day et al. v. Supreme Forest Modern Circle,' 156 S. W. 721, 174 Mo. App. 260; Boyce v. Royal Circle, 99 Mo. App. 349. (3) Instruction 15 on waiver was not not authorized by the evidence and does not properly submit the question of waiver. Wise v. Wabash, 135 Mo. App. 230; State v. Edwards, 203 Mo. 528.

*Park & Brown* for respondent.

(1) Appellant's first point is puerile. Copy of the certificate was attached to the petition and verified by plaintiff's attorney. R. S. 1909, sec. 1830; State ex rel. v. Henderson, 86 Mo. App. 482; Burdsall v. Davies, 58 Mo. 138; Graham v. Morstadt, 40 Mo. App. 333. (2) The court very properly overruled defendant's demurrer at the close of all the evidence and submitted the case to the jury on the questions of waiver of forfeiture. The forfeiture relied on by defendant was clearly waived. By the custom or course of dealing of allowing a large percentage of members to become delinquent without enforcing the penalties of suspension and forfeiture. Keys v. Natl. Council, 174 Mo. App. 671; Cline v. W. O. W., 111 Mo. App. 607; Andre v. Woodmen, 102 Mo. App. 377; James v. Ins. Co., 148 Mo. 1; Burke v. A. O. U. W., 136 Mo. App. 450; Burchard v. W. C. T. Assn., 139 Mo. App. 606; Godwin v. K. & L. of S., 166 Mo. App. 289. (3) It is immaterial whether insured knew of the waiver. Galvin v. Knights, 169 Mo. App. 511; Stiepel v. Life Assn., 55 Mo. App. 233. (4) By accepting dues and retaining them after full knowledge of the facts. Keys v. Natl. Council, 174 Mo. App. 671; James v. Ins. Co., 148 Mo. 1; Andrus v. Ins. Co., 168 Mo. 151; Wichman v. Ins. Co., 120 Mo. App. 51; Reed v. Bankers Union, 121 Mo. App. 419; Burke v. A. O. U. W., 136 Mo. App. 450; Francis & Hunter v. A. O. U. W., 150 Mo. App. 347;

Zahm v. Frat. Union., 154 Mo. App. 70; Godwin v. Ins. Co., 166 Mo. App. 289; Bell v. Ins. Co., 166 Mo. App. 390. (5) By failure to mail notice of suspension as required by laws. There was no testimony that notice had been mailed. Seehorn v. Knights, 95 Mo. App. 233; Schen v. Grand Lodge, 17 Fed. 214; Meisenbach v. Maccabees, 140 Mo. App. 86. (6) Testimony by the wife (beneficiary) that no notice of suspension was received makes a question for the jury. Meisenbach v. Maccabees, 140 Mo. App. 86.

TRIMBLE, J.—Plaintiff sues upon a certificate of insurance, issued to her husband by the defendant, a fraternal beneficiary association.

Defendant says the husband had forfeited his insurance for nonpayment of dues within the time required by the by-laws of the order and the terms of the certificate. Plaintiff contends that these provisions in the insurer's favor are waived and cannot now be relied upon.

This issue was tried and the jury found for plaintiff. Defendant has appealed.

The certificate was issued March 12, 1912. Watkins, the insured, was to pay every month the sum of $1.80 which, for brevity, we shall term "dues." This was to be collected by the secretary of the local lodge, called the correspondent, and by him remitted to the home office, or Chief Correspondent, so as to reach there not later than the 10th of the month following. Under section 154 of the by-laws these dues must be paid by midnight of the last day of the month, if not so paid, the certificate became null and the payments thereon forfeited. The certificate also provided that delinquency in this regard rendered the certificate void. But by other sections such suspended member could be reinstated within sixty days from date of suspension by merely paying all dues, including those for the current month, provided he was in good health at the

time of reinstatement. If, however, he was suspended more than sixty days and less than six months, he was required to furnish a health certificate to be approved by the chief medical director.

The insured did not pay the dues for the months of September and October, 1912. On Saturday morning November 30, 1912, insured's wife gave her brother, A. C. Ward, who was living at the same house, money with which to pay her husband's dues. The husband was working as a mail carrier in the Westport District and could not attend to it himself. Ward, the brother, neglected to pay the dues to the local secretary on that day, but did so about one o'clock the following Monday, December 2. As to what took place when the money was paid, the parties differ. Ward says he asked to pay Watkin's dues and was told that he was suspended for nonpayment of the dues for September, whereupon he told the secretary he thought that month was paid as they had a receipt therefor. He says the secretary said to him that he could pay the September dues with the others and if he had paid that month to bring in his receipt therefor and they would either refund it to insured or give him credit for the January dues; that thereupon Ward paid for four months, September, October, November and December, amounting to $7.20 and received a receipt therefor. He admits that the secretary asked him if Watkins was in good health and that he told him he was. The secretary says he asked him why Watkin's didn't come himself and that Ward replied he was a mail carrier and did not come in till late. The secretary also says he told him Watkins could not be reinstated if he was not in good health but that Ward told him he was; that as Ward claimed they had a receipt for September, (which, if true, would make the payment then sought to be made within the sixty days, and therefore entitled insured to be reinstated without a health certificate), he accepted the dues for the four months of

September, October, November and December, promising that if they brought a September receipt in, he would apply the payment for that month on the January dues.

Ward then left and went to the theater that afternoon. On his return home in the evening he learned that Watkins, while on his route carrying the mail that day had received a fall about ten o'clock in the morning which fractured his skull and rendered him unconscious. He had been taken about eleven o'clock to a hospital in the city where he remained in that condition till his death about 2 a. m. of the next day, December 3. Ward says he knew nothing of the accident at the time he was in the secretary's office and did not learn of it until he reached home that night.

While Ward's claim that he did not know of his brother-in-law's fall may be open to suspicion, yet it is not wholly improbable. There is no evidence to contradict it nor other ground upon which a trier of the fact would be justified in not accepting his testimony. The case is not one where the payment was made and the reinstatement obtained by fraud, that is, we cannot say there was fraud as matter of law. Indeed, if, by the custom of doing business, members were allowed after the lapse of sixty days to pay their dues without furnishing a certificate of health, then the element of fraud does not enter into the case. So that the question involved is only one of waiver or no waiver.

As a matter of fact Watkins had not paid his dues for September as Ward thought he had. He had paid his August dues on September 4, and received a receipt dated on that day. It was this receipt Ward and plaintiff's wife had thought was the September receipt. By the strict terms of the policy and of section 154 of the by-laws, Watkins, *ipso facto*, stood suspended when he failed to pay the August dues by midnight of the 31st of that month. But his money had been received, September 4th, without enforcing the suspension, or

making any note thereof. And, according to defendant's own evidence his suspension for the nonpayment of the September dues was not noted on the books until October 1, 1912. The work of collecting the dues was left entirely to the secretaries or correspondents of the local lodges. They were not required to report the dues collected for each month until the tenth of the month following. These reports were not arranged so as to show when the member paid his dues, whether before the end of the current month or during the ten days of the next month. And the secretaries were in the habit of sending in all sums paid up to the 10th even if they were for dues payable and due on the last day of the preceding month. The record of suspensions was kept in the offices of the local correspondents by marking an "S" after the name of the member suspended and an "R" thereafter upon his reinstatement.

The evidence, however, shows clearly that the head office knew the local secretaries were allowing members to pay their dues after the expiration of the month for which they were due. Twenty per cent of the members failed to pay their dues on the last day of the month as the by-laws required, and yet were allowed to pay without having been suspended, and it became the custom not to require them to pay on the last day of the month. Eighty or ninety per cent of the money collected by the secretary on December 2, the day Ward paid Watkin's dues, was for the month of November but no suspensions were enforced or noted. It might be thought that inasmuch as the local secretaries had authority without a health certificate to reinstate the members who paid up within sixty days, the noting of suspension as to those who thus paid was a mere matter of form which would not affect the status of such members since the mere payment of their dues within sixty days reinstated them, so that it was not material whether suspension and subsequent reinstatement was

noted on the books or not. But this is a circumstance showing that the by-laws were not being observed in this regard, and that as a matter of fact the insurance was treated as being still in force after the end of the month although the dues for that month had not been paid.

Now with reference to those members who were delinquent but did not pay up within the sixty days, the evidence shows that they too were allowed to pay the same as those who had paid within the sixty days. The books showed that the dues of one member, Lena E. Washington, for the months of January to July, both inclusive, were not paid until July 16th, which was much more than sixty days after delinquency for the months of January, February, March and April, and yet neither suspension was noted or health certificate required. The same was true of a large number of others who paid their dues more than sixty days after their delinquency and no suspension was enforced nor health certificate required.

It cannot be claimed that this was unknown to the company. In the first place, the time and manner of collecting the dues were left so entirely within the control of the local secretaries, as to almost forbid the company from denying that the local secretary was its other self. In the next place, there was ample evidence from which the jury could find that the company itself knew of the custom and manner in which the business was being carried on. It is inconceivable that a local secretary could report the payment of a member's dues for from three to six months in arrears and the company not know of such delinquency and nonobservance of the by-laws. If the company could not know, then by its own methods it has put the local secretaries in the very place and stead of the company itself regardless of any question whether they should be so regarded if the facts were different. Again, the books showing these conditions were in the hands of a special

auditor sent out by the company from July, 1912, to the end of that year, and yet no action was taken to forbid the method by which the business was carried on, notwithstanding the fact that the by-laws gave the chief correspondent and the grand foreman ample power to remove and punish any local secretary who violated the rules of the order.

Neither can it be claimed that possibly those who paid after the expiration of sixty days furnished a health certificate. The jury could infer that as no suspension had been marked against them no health certificate was required. The keeper of the local books said there were none. The chief correspondent said he did not know whether any were furnished by those members or not. But on the day he so testified the court adjourned over to a later date on account of an election and in the interim he had ample time to obtain from the home office the certificates of health if there were any. The fact that he did not was sufficient to justify the jury in thinking there were none, and that the only difference between the company's stand on the insurance of those members and of Watkin's, the deceased, arose from the fact that the company was called on to pay his insurance but was not asked to pay theirs. The law will not permit an insurance company, even a fraternal mutual organization, to accept dues or premiums from its members as if the insurance was in force, and then, when death matures a liability on one of the policies, to refuse payment on the ground that the contract has been violated. If the company desires to hold the member to a strict observance of the by-laws when it is called upon to pay, it must observe them strictly itself when the money is coming its way. And it should treat all members alike. It cannot make fish of one and fowl of another. If other members were allowed the privilege of paying up from three to six months delinquent dues without furnishing a health certificate, certainly Watkins had. And no

doubt no question would have been raised over it, had it not been that he unfortunately met with an accident which shortly thereafter matured his policy.

Another feature bearing upon the question of waiver is the defendant's disposition of the money for the dues after the defendant became aware of the fact that Watkins was not in good health at the time it was paid. The secretary says when Ward returned four or five days later to obtain blank proofs of loss, he tendered him the money he had paid. But Ward and Kelly, who was present this time, say no tender was made. It was for the jury to say who told the truth. But a few days later the plaintiff called at the office and asked for blanks, and it would seem that if the secretary was insisting that the money did not belong to the company, he would have tendered it to the beneficiary in the policy, the wife of the man whose money it had been, but no such tender was made. The head office knew, shortly after its payment, that the money had been paid to the company and although two letters were written from the head office or those representing it, as early as January 23, 1913, nothing was said about any tender having been made although these letters were stating the theory of defendant's denial of liability which would involve the matter of prompt repayment of the dues received. And it was not until the amended answer was filed, May 22, 1913, almost six months after the dues were received, that they were deposited in court for plaintiff's benefit.

Under the decisions of our State, the foregoing facts are sufficient to authorize the submission to the jury of the question of whether there has been a waiver of the strict provisions of the certificate of insurance and of the by-laws. [James v. Mut. Reserve Fund Life Assn., 148 Mo. 1; Cline v. Woodman of the World, 111 Mo. App. 601; Andre v. Modern Woodmen, 102 Mo. App. 377; Burke v. Grand Lodge, A. O. U. W., 136 Mo. App. 450; Burchard v. Western Com'l. Trav-

elers Assn., 139 Mo. App. 606; Godwin v. Knights and Ladies of Security, 166 Mo. App. 289; Keys v. National Counsel Knights & Ladies of Security, 174 Mo. App. 671.]

It cannot be urged that Watkins, the insured, did not know of the method in which the business was conducted. If the evidence is sufficient to show waiver on the part of the one against whom it is invoked it is not necessary that the insured knew of it. [Galvin v. Knights of Father Matthew, 169 Mo. App. 496, l. c. 511; Stiepel v. German Am. etc. Life Assn., 55 Mo. App. 224, l. c. 233.] It is not difficult or unreasonable to believe or infer that since so large a number of members were allowed to become delinquent without being suspended, the fact that such was permitted must have been known to every member of the order, if knowledge were necessary to be shown.

The copy of the certificate attached to the petition was sworn to by the plaintiff's attorney, and not by the plaintiff herself. Section 1844, Revised Statutes 1909, seems to require the copy to be verified by the party. But the answer admits the execution and delivery of the certificate sued on. No objection was made to the omission to file the instrument sued on before pleading to the merits and going to trial. Hence the defect is waived. [Burdsall v. Davies, 58 Mo. 138.] Where the instrument sued on is not filed with the petition the remedy is by motion to dismiss or to require that it be filed. [Hannibal and St. Joe R. Co. v. Knudson, 62 Mo. 569; State ex rel., v. Eldridge, 65 Mo. 584; Graham v. Morstadt, 40 Mo. App. 333.]

It is urged that plaintiff's instructions numbers 12 and 13 are erroneous. Instruction 12, in effect, told the jury that the burden was on defendant to prove a forfeiture. That is where the burden was. [Gruwell v. National Council Knights and Ladies of Security, 126 Mo. App. 496; Mulroy v. Knights of Honor, 28 Mo. App. 463; Burchard v. Western Com'l. Travelers Assn.,

139 Mo. App. 606.] The fact that Watkins, the insured, was unconscious from the fall at the time the money was paid makes no change in this regard. As hereinbefore stated, the authority to pay was given Saturday, November 30, while he was conscious and in good health; and if the practice and custom of the society allowed a member to pay, after delinquency for sixty days, without a health certificate, then the payment was valid regardless of his condition at the time. If such was the custom, then the payment was of the same force and effect as if made when due. And the fact that a member is *in extremis* when a payment falls due does not affect the member's right to pay. Instruction number 13 is not erroneous in view of what has been hereinbefore said concerning the sufficiency of the evidence to justify the submission to the jury of the question of waiver.

Instruction number 14, however, told the jury that if they found for the plaintiff they should allow her $2000, and might add thereto six per cent interest from date of demand, and under this the jury allowed $2146.67. The instruction was erroneous. The policy did not agree to pay the full sum of $2000 except where the insured had lived out his expectancy of life. If he died before that time, under paragraph three of the policy, there was to be deducted out of the proceeds of the policy a sum equal to twelve assessments per year for the unexpired period of such life expectancy, based on the American Experience Tables of Mortality, which should be paid into the Reserve Fund of the Society. The death of the insured occurred within the first year of the life of the Certificate, and at his age, twenty-eight, the sum to go into the reserve fund amounted to $483.34 which, deducted from $2000, left due the beneficiary the sum of $1516.66, and this was the amount stated in the policy as the sum due the beneficiary in case insured died during the first year. The policy, therefore, does specify the amount

it will pay in case the assured dies within the first year, and in this respect it differs from the policy in the case of Easter v. Brotherhood of American Yeomen, 154 Mo. App. 456, which promised to pay $2000, and did not specify the amount due in case the insured died within the first year. It is not necessary for us to decide whether a fraternal beneficiary association, doing business in this State under section 7109, of article 9, chapter 61, Revised Statutes 1909, and issuing policies which provide for and collect rates of assessments under the *proviso* of that section, are exempt from section 6952, of article 3, chapter 61, Revised Statutes 1909, which requires companies, insuring on the assessment plan in conformity with said article 3, to specify the exact sum of money which they promise to pay upon each contingency insured against. If said section 6952 does apply to fraternal beneficiary associations issuing policies under the proviso of section 7108, then defendant has fully complied with said section 6952 by specifying that it will pay the exact sum of $1516.66 upon the contingency that the insured dies during the first year of the life of the certificate. Plaintiff was, therefore, not entitled to $2000 but to $1516.66 instead. This error, however, can be corrected by remittitur and does not call for a reversal and remanding of the case. If, therefore, the plaintiff will, within ten days from the announcement of this opinion, enter a remittitur of all sums in excess of $1516.66, with interest at 6 per cent, the judgment will be affirmed, otherwise it will be reversed and remanded. It is so ordered. All concur.