[No. 14280.  Department One.  January 31, 1918.]

H. E. KENNEDY, *as Guardian etc., Respondent*, v.
SUPREME TENT OF THE KNIGHTS OF THE MACCABEES
OF THE WORLD, *Appellant.*[1]

INSURANCE—FRATERNAL INSURANCE — BY-LAWS — WAIVER.  A fraternal insurance by-law automatically suspending a member for nonpayment of dues is waived by long continued custom of the society allowing a member to retain his good standing notwithstanding delinquency, except upon notice, which custom was relied upon by the assured.

SAME — FRATERNAL INSURANCE — PAYMENT OF DUES — POWERS OF AGENT—WAIVER.  The secretary of a local lodge charged with the collection and remittance of dues is such a general agent of the national body that his mistake in waiving collections is regarded as the act of that body.

SAME — FRATERNAL INSURANCE — SUSPENSION — NOTICE—QUESTION FOR JURY.  Whether a member of a fraternal society received notice of his suspension for nonpayment of dues is a question for the jury, where there was evidence that his reported suspension was unintentional and contrary to the custom of the lodge, and that he had no notice of suspension as required by the by-law, which it was the custom of members to rely upon.

TRIAL—INSTRUCTIONS—REQUESTS.  It is not error to refuse requested instructions which were not within the issues or which ignored a matter within the issues.

APPEAL—HARMLESS ERROR—INSTRUCTIONS.  Error cannot be predicated upon sending to the jury room a requested instruction modified but leaving the stricken portion legible, where it was merely modified to conform to instructions given.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered April 18, 1917,

[1]Reported in 170 Pac. 371.

upon the verdict of a jury rendered in favor of the plaintiff, in an action on a benefit certificate; Affirmed.

*Ballinger & Hutson,* for appellant.

*J. Speed Smith, Henry Elliott, Jr.,* and *G. E. Steiner,* for respondent.

FULLERTON, J.—The appellant, on July 24, 1914, issued a benefit certificate in the sum of $3,000 to Francis Sprague Kennedy, in which his son Frank Hall Kennedy was named as beneficiary. The insured died on March 28, 1915, and the appellant, claiming the certificate had lapsed through nonpayment of dues and the consequent suspension of the insured from the order, refused to make payment according to its terms. The respondent, as guardian *ad litem* for the beneficiary, who was a minor, instituted this action to recover upon such benefit certificate. The theory of the action was that the laws of the order whereby a member would be automatically suspended for nonpayment of dues were waived by long-continued custom of the society allowing a member to retain his good standing notwithstanding a failure to meet his dues as they accrued. Upon a trial to a jury, verdict was returned in favor of respondent, upon which a judgment was rendered in the sum of $3,000, with interest and costs.

The complaint of respondent was attacked both by motion to strike and by general demurrer. After allegations setting up the membership of the insured in Seattle Tent No. 8 of the Knights of Maccabees of the World, the issuance to him of a life benefit certificate in favor of his son, his appointment as a deputy state commander authorized to solicit new members upon a certain compensation per $1,000 of insurance, the indebtedness to him of the supreme tent for commissions earned, and that his dues had been fully paid until the end of December, 1914, the complaint alleged, in sub-

stance, that the record keeper for Seattle Tent No. 8 had for years accepted the dues of members up to the 20th of the month following the month for which they were due and payable, and that no record of suspension for defaults in a prior month was made until such report was sent in to the supreme tent on or about the 20th; that it was the custom of the record keeper, before sending in the report of suspension, to send a notice to the member that his dues were unpaid and that, unless they were paid by the 20th, he would be reported as suspended; that it was the custom of the record keeper, and also a duty imposed by one of the by-laws, to mail a notice to each member suspended, notifying him of his suspension and calling his attention to the method of reinstatement; and that there was a custom and practice followed in Seattle Tent No. 8 by which the tent or its trustees authorized the payment of the dues of a member out of the funds of the tent when the member was outside of its jurisdiction, or for any other cause deemed by the tent or the trustees to be good and sufficient.

It was further alleged that there was an unsettled account between the insured and Hurd, another deputy state commander, who had gone to Russia, whereby the sum of $18 was coming to Kennedy for members secured for the order in such deputy's territory, Seattle Tent No. 8, which sum it was agreed by Hurd should be applied on Kennedy's dues accruing subsequent to November 1, 1914, and that his dues for the months of November and December were paid by the lodge pending the adjustment of the commissions earned by the insured; that, on February 17, 1915, at a meeting of the tent, and in the presence of Kennedy, the record keeper was instructed to pay the dues accruing during Kennedy's absence from the jurisdiction until such time as the matter of the commissions due him from

the appellant should have been adjusted; that thereafter Kennedy left Seattle, and on February 20 the record keeper, through inadvertence and mistake, noted Kennedy as suspended, and so reported to the appellant; that Kennedy was never advised that he would be suspended nor of the fact that he had been marked and reported suspended; that, at the time, he had a credit with the appellant of $18, which had been agreed by its local officers to be applied upon his dues and rates, and which was sufficient to fully pay them for the months of January, February, and March, 1915; and that, at the time of his death on March 28, 1915, he had fully complied with all the conditions of his benefit certificate. The motion to strike portions of the complaint was addressed to those allegations showing custom, and to further allegations tending to fortify the showing of custom by the statement of interrelated facts. The demurrer was on the ground of the insufficiency of the facts to state a cause of action. We think the motion and the demurrer were both properly overruled. It is the rule in this state that the by-laws of a fraternal insurance society may be waived by a custom acquiesced in by the society. *Richardson v. Brotherhood of Locomotive Firemen & Enginemen,* 70 Wash. 76, 126 Pac. 82, 41 L. R. A. (N. S.) 320; *Frank v. Switchmen's Union of North America,* 87 Wash. 634, 152 Pac. 512; *Morgan v. Northwestern Nat. Life Ins. Co.,* 42 Wash. 10, 84 Pac. 412; *Boutin v. National Casualty Co.,* 86 Wash. 372, 150 Pac. 449.

But it is appellant's contention that the custom must not only be general and uniform, but must have been known by the insured and relied upon by him to his injury, citing *Butler v. Supreme Court of Independent Order of Foresters,* 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293. While the complaint does not expressly allege the insured's reliance on the custom, it

does state facts from which such a reliance is necessarily inferred. *Edmiston v. Homesteaders,* 93 Kan. 485, 144 Pac. 826, Ann. Cas. 1916D 588; *Watkins v. Brotherhood of American Yeomen,* 188 Mo. App. 626, 176 S. W. 516. In *Trotter v. Grand Lodge of Iowa Legion of Honor,* 132 Iowa 513, 109 N. W. 1099, 7 L. R. A. (N. S.) 569, the rule is stated that the question whether waiver will be found in any particular case depends not upon the intention of the insurer against whom it is asserted, but upon the effect which its conduct or course of business has had upon the beneficiary.

The appellant also contends that the secretary of a subordinate lodge of a national fraternal insurance society, charged with the collection and remittance of dues, is merely the agent of the national body for that limited purpose, and is not such a general agent that his mistake in the performance of those duties could be chargeable as the act of his principal. But the contrary rule is well established in this state. *Schuster v. Knights & Ladies of Security,* 60 Wash. 42, 110 Pac. 680, 140 Am. St. 905; *Frank v. Switchmen's Union of North America, supra; Shultice v. Modern Woodmen of America,* 67 Wash. 65, 120 Pac. 531; *Richardson v. Brotherhood of Locomotive Firemen & Enginemen, supra.* See, also, *Lounsbury v. Knights of the Maccabees of the World,* 128 App. Div. 394, 112 N. Y. Supp. 921; *Knights of Pythias v. Withers,* 177 U. S. 260; *Murphy v. Independent Order Sons & Daughters of Jacob of America,* 77 Miss. 830, 27 South. 830, 50 L. R. A. 111.

There are decisions of other courts holding that the custom of a local lodge is not binding on the supreme lodge. But if that rule were recognized in this state, there is evidence showing that one of the supreme officers had knowledge of the custom of Seattle Tent No. 8 in carrying its members, and commended that lodge

for paying the dues of delinquent members out of its general fund.

The contention is made that the duty to pay assessments in a fraternal beneficiary society is correlative with the right to benefits, and since the society has no other source of income, such duty to pay is of the very substance of the contract made by the certificate holder. In support of this proposition, *Elliott v. Knights of the Modern Maccabees,* 46 Wash. 320, 89 Pac. 929, 13 L. R. A. (N. S.) 856, is cited, in which this court held that the fraud practiced by a local officer of the society in admitting a member over the age limit prescribed by the laws of the national body would not bind the society on the principle of estoppel by waiver. But that decision at the same time recognizes the rule that the "authorities hold that certain omissions affecting procedure, such as time of payment of assessments, proof of loss, etc., may sometimes be waived." The case of *Thomas v. Knights of the Maccabees of the World,* 85 Wash. 665, 149 Pac. 7, Ann. Cas. 1917 B 804, L. R. A. 1916A 750, is also given as supporting "the substance of the contract" theory, but that decision upholds the right of a beneficiary society to increase its rates regardless of the original contract with the member, and is not pertinent for the reverse proposition that the right to benefits was of the very substance of the contract which could not be altered or waived. Nor do the cases militate in any degree against the rule in this state that the prompt payment of assessments in fraternal insurance societies is a matter which may be waived by the local officials, who, in such matters are looked upon as agents of the national body, binding it by their acts. For cases in other states on the question of waiver of by-laws, see: *Knights of Maccabees v. Parsons* (Tex. Civ. App.), 179 S. W. 78; *McMahon v. Supreme Tent Knights of Maccabees of the World,* 151

Mo. 522, 52 S. W. 384; *Burke v. Grand Lodge A. O. U. W.,* 136 Mo. App. 450, 118 S. W. 493; *Britt v. Sovereign Camp, Woodmen of the World,* 153 Mo. App. 698, 134 S. W. 1073; *Griffith v. Supreme Council of Royal Arcanum,* 182 Mo. App. 644, 166 S. W. 324; *Oldham v. Modern Brotherhood of America,* 170 Mo. App. 564, 157 S. W. 92; *Wintergerst v. Court of Honor,* 185 Mo. App. 373, 170 S. W. 346.

The question of the sufficiency of the evidence was raised by motions for dismissal on the merits, for nonsuit, for a directed verdict, for judgment *non obstante,* and for new trial.

It appears from the evidence that the insured joined Seattle Tent No. 8 of the order of Maccabees in July, 1914, and was at once appointed deputy state commander for the purpose of soliciting new members in Seattle and vicinity. His remuneration was to be at the rate of $5 for each $1,000 of insurance taken out by such new members. Dr. Eugene S. Hurd was deputy state commander for Seattle Tent No. 8, and any new members procured for that local lodge by Kennedy were under a separate agreement with Hurd as to the matter of compensation. The life benefit certificate taken out by Kennedy was valid only so long as he paid all dues and remained in good standing. His monthly dues for insurance, taxes, assessments and lodge dues amounted to a total of $5.40. These dues were paid by him for the months of August, September, and October, 1914, and he seems never to have personally paid in cash any dues thereafter. Inasmuch as he had commissions coming to him as deputy state commander and under his contract with Dr. Hurd, his local lodge advanced his dues for the months of November and December, 1914, but the dues for January and February, 1915, were never actually paid into his own lodge nor advanced by that body to the supreme

lodge. There was an apparent agreement, however, that his lodge was to take care of his dues and see that he was not suspended pending a settlement for the commissions claimed by him as due him under his two contracts. Kennedy was present at the session of his own tent or lodge held on February 17, 1915, and the question of his delinquency was under discussion at that time. Two of the trustees finally told the record keeper to carry Kennedy until the supreme tent had settled his commissions. But that officer, on making his customary monthly report of members in good standing or otherwise, with draft covering their dues, reported Kennedy as suspended. He testified that the reported suspension was unintentional, as he had overlooked the instruction of the trustees to pay Kennedy's dues until the question of his commissions could be straightened out. The custom of the local tent to pay the dues of delinquent members and report them to the supreme tent as in good standing was proved over the objections of appellant. There was proof of a by-law requiring that suspended members be notified and given an opportunity to reinstate themselves within a period of three months, but no notice of suspension to Kennedy was given, although there is conflicting evidence that he had knowledge of the fact. This was not only the rule under the by-laws, but was a custom which the tent had followed and upon which members were entitled to rely. The only excuse given for not notifying Kennedy was that the record keeper was ignorant of his address. It is the claim of respondent that Kennedy was lulled into security, both by the assurance of being carried by the tent temporarily and by the want of the necessary and customary notice of suspension, otherwise he would have taken measures to adjust his good standing in the order, while the appellant claims he had actual notice and

had no intention of reinstating himself. This conflict in the evidence was left for the jury to resolve, which they did by finding in favor of respondent.

The appellant makes the further claim that the laws of the order and the by-laws of the tent provided for suspension automatically without the necessity of notice. As the issue, however, was whether or not there had been a waiver of such by-laws, under the rule in this state recognizing the efficacy of such a waiver, the question of automatic suspension is necessarily immaterial.

To our minds, the most serious contention raised by the appellant under the evidence is whether Kennedy had actual knowledge of his suspension and acquiesced therein. If that were true, this beneficiary under the certificate would be bound thereby, even if the suspension were not strictly in conformity with the rules of the order. *Miller v. United States Grand Lodge O. B. A.*, 72 Mo. App. 499; *Hand v. Supreme Council of Royal Arcanum*, 44 App. Div. 484, 60 N. Y. Supp. 808; *Lavin v. Grand Lodge, A. O. U. W.*, 112 Mo. App. 1, 86 S. W. 600; *Sheridan v. Modern Woodmen of America*, 44 Wash. 230, 87 Pac. 127, 120 Am. St. 987, 7 L. R. A. (N. S.) 973. The testimony upon this matter was sufficiently conflicting to make a proper question for the determination of the jury, but appellant's contention finds support to some extent in the fact that it appears from the evidence that the supreme tent had accounted with Kennedy and Hurd for their commissions on new members, with the exception of five dollars coming to Hurd. If Kennedy were entitled to this sum under his agreement with Hurd, he must have known that he had no claim against the supreme tent sufficient to pay his dues, which at the time amounted to $10.80 for January and February. This fact is confirmatory of the evidence showing acquiescence, and

would incline us to accept that evidence if the case were before us for decision on the facts. But, on the other hand, the evidence is clear that Kennedy was given to understand that the local tent would carry him for a period, as the evidence showed had been their custom with regard to other members who were not shown to have any credits against the society. In view of all the evidence showing the custom to carry members, and the further agreement to that effect upon which Kennedy had a right to rely, we think the evidence as to his acquiescence in the suspension, owing to its contradictory character, was properly submitted to the jury.

Errors are assigned upon the refusal of the court to give certain requested instructions, but we think they were rightly refused, since they were either not within the issues, in that they ignored the matter of custom in the payment of dues, or sought to have the jury charged that the record keeper of the local lodge was the agent of Kennedy in paying his dues into the supreme tent. The modification by the court of certain requested instructions which it gave to the jury was also proper, since they were thus brought within the issues, and the law as applied in this state respecting the customs of a local lodge being binding on the governing officers of the supreme tent. Complaint is made that, in one of the requested instructions adopted by the court with a modification by striking out certain portions, the original with the stricken portion so marked as to leave it legible was submitted to the jury, thereby emphasizing to the jury the withdrawal from their consideration of matter deemed essential by the appellant. While this manner of submitting instructions is not to be commended, we find no prejudicial error here, since it merely made the instruction as modified conform to those given by the court, which

were properly addressed to the theory upon which the action was tried.

Further objection is made to certain of the instructions given, but we are satisfied they came within the law and the evidence, and that there is no merit in the errors assigned as to them.

The judgment is affirmed.

ELLIS, C. J., WEBSTER, PARKER, and MAIN, JJ., concur.