[No. 27031. Department One. August 1, 1938.]

ORO MIX, *Appellant*, v. AMALGAMATED MEAT CUTTERS AND BUTCHER WORKERS OF NORTH AMERICA *et al., Respondents.*[1]

*V. A. Montgomery,* for appellant.

*L. Presley Gill,* for respondents.

GERAGHTY, J.—This action was brought by the plaintiff below to recover death benefits alleged to be due under the constitutions of the defendants, voluntary

[1]Reported in 81 P. (2d) 823.

associations of which her husband, Otto Mix, had been a member. A trial of the cause before the court, sitting without a jury, resulted in findings and a judgment favorable to the defendants. The plaintiff appeals.

Otto Mix had been a member of the Amalgamated Meat Cutters and Butcher Workers of North America (referred hereafter as the International) for many years, and, during that time, had held membership in different local affiliated unions of the organization. He became a member of Local Union No. 81, Seattle (referred hereafter as the Local), in 1932. August 19, 1936, he was stricken with coronary thrombosis, and became incapacitated for work at his trade. He died December 24, 1936, as the result of a second attack. When first stricken, he was working at his trade in an establishment conducted under agreement with the Local, providing for the employment of union men in accordance with the working rules of the Local.

The constitution and by-laws of the International provides for the payment of death benefits as follows:

"ARTICLE VI
"Death Benefits
"Section 1. If a deceased member has been in *good standing continuously for a period of six (6) months immediately preceding his or her death,* the Secretary-Treasurer shall, upon the death of such member, pay out of the funds set apart for that purpose the sum of Fifty Dollars ($50.00) to such party or parties as the deceased may have designated, and after having been a member as above stated for one year, they shall receive the sum of One Hundred Dollars ($100.00) unless his or her death shall have resulted from tuberculosis. After having been a member as heretofore stated for two years, they shall receive the sum of Two Hundred Dollars ($200.00), and after having been a member as heretofore stated for three years, they shall receive the sum of Three Hundred Dollars ($300.00). . . .

"Sec. 6. If a deceased member *has been in good*

*standing continuously for a period of six months pre-
ceding his or her death in an affiliated Local Union,
and has been suspended for non-payment of dues, and
is again reinstated in a period of two months,* providing
he is in good health, and the Local Union to which he
belongs pays up all back dues to the International, said
member shall then be entitled to all the benefits, as
before his suspension." (Italics ours.)

By the constitution and by-laws of the Local, provi-
sion is made for sick and death benefits as follows:

"ARTICLE XIV
"Sick and Death Benefits
"Section 1. Any member of this Union in good
standing *for three consecutive months previous to his
illness,* who may become disabled through sickness or
accident, shall not receive any benefits for the first
week of his illness, but if his illness continues for a
longer period, he shall receive the sum of $15.00 per
week for six weeks following the first week of his
illness: . . .

"Sec. 2. Sick assessments will be $1.00 per quarter,
payable January 1, April 1, July 1, and October 1. Any
member upon becoming sick or disabled must be re-
ported to the Union officers at the earliest opportunity,
otherwise he shall not be entitled to any sick benefits.

"Sec. 3. An assessment of three ($3.00) dollars per
member shall be levied upon the death of a member
and the Union shall pay the beneficiary of the deceased
member, Fifteen Hundred ($1500) Dollars, *provided
that said member shall have had his dues, fines, as-
sessments, and any other indebtedness owing to the
organization paid in full and otherwise be in good
standing for the calendar month preceding the month
in which he dies* which payment must have been made
on the date of or prior to his death, except when death
results from accident or any sudden acute ailment,
then payment will be accepted if tendered during the
month in which he dies." (Italics ours.)

Mix had paid all dues and sick and death assessments
accruing against him up to the first day of August,
1936, the month in which he was stricken, but he

failed to pay a fine, or assessment, of five dollars levied against him in the preceding January for the infraction of one of the working rules of the Local. He had known of this assessment and had been cautioned by the business agent of the Local to pay it, or, otherwise, his right to union benefits, including his right to work, would be prejudiced.

The record discloses that, during the period of his membership, he was often delinquent in the payment of his dues and assessments to the Local. He was suspended December 1, 1934, for non-payment of dues. After that suspension, he agreed to pay up his obligations in installments, but, in March, 1935, he owed $22, which he agreed to pay in full within thirty days. An entry in the ledger of the Local shows that he was reinstated in June, 1935, but was again suspended December 1, 1935. No reference to a formal reinstatement, after this suspension, appears in the records of the Local. He continued to work, however, and paid dues and asesessments, although often, as theretofore, delinquent.

It would appear that, prior to January 1, 1936, notice to a member was required before suspension. On that date, an amendment to the constitution became effective which eliminated the requirement for notice. As revised, the section read:

"Any member in arrears two months whose arrearage is not paid by the first meeting of the third month, shall stand suspended and shall be deprived of all the benefits of the Union for three months after being reinstated and shall be subject to removal from his job." Constitution and By-Laws, Art. VII, §1, p. 11.

Under this provision, by the failure of Mix to pay the five dollar fine assessed against him January 27th, he automatically became suspended after the first meeting in April, if not already under suspension.

The regular monthly dues of the Local were $2.50, one dollar of which was to be transmitted by the Local to the International headquarters. September 2nd, the appellant paid her husband's August dues at the office of the Local. While there, she was informed of the unpaid assessment of five dollars levied in January. On learning this, she returned home and procured a postal money order for $7.50, covering the delinquent assessments and dues for the month of September, and mailed it to the Local, where it was received and credited on September 4th. This postal order, as the trial court found, paid all charges against the husband up to October 1st.

No further payment was made by the appellant or her husband to the Local, so that, at the date of his death in December, he was in default for dues, on the books of the Local, for the months of October and November, as well as for any other charges payable by him falling due in those months under the constitution and by-laws. A sick benefit assessment of one dollar became due October 1st, and a member of the Local, Bosworth, died August 20th, for which an assessment of three dollars was subsequently levied on the members. Whether or not Mix had received notice of this assessment, making him chargeable with its payment, is left in doubt by the record, but becomes immaterial in our view of the case.

Shortly after Mix was first stricken, the officers of the Local were informed of the fact, and its business agent called on him and received his directions for changing his named beneficiary from a daughter to the appellant, his wife. A letter written by the physician attending Mix, on September 19, 1936, was received by the Local, treated as an application for sick benefits, and referred to the finance committee. The committee recommended that sick benefits be not allowed, for

the reason that the assessment of five dollars, levied the preceding January, had not been paid in time, and that the applicant was in arrears at the beginning of his illness. The report of the committee was approved at a meeting of the Local.

On November 16th, the executive board of the Local rejected a request made personally by Mix for sick benefits and the remission of his dues during his sickness. The constitution of the International empowers a local to remit the dues of any member reported sick or out of work, but, in such case, the Local must pay the member's dues to the International, and it is to be inferred from the record that it was the custom of the Local to remit the dues where the member was allowed sick benefits. While Mix did not pay his dues for the months of October and November, the Local sent his monthly per capita tax to the International for these months. The trial court found that this was done through inadvertence.

As we have seen, all of Mix's financial obligations to the Local were paid up to October 1, 1936. But, as he paid nothing subsequently to that date, at the time of his death dues were delinquent for the months of October and November, as well as his sick assessment of one dollar payable October 1st. He was, therefore, not in such standing, when he died, as would entitle his beneficiary to death benefits, unless, as the appellant contends, the acceptance by the Local, on September 4th, with knowledge of his illness, of dues for the months of August and September and the assessment levied in the preceding January constituted such a waiver of his delinquency as entitled him to sick benefits.

■ If he was rightfully entitled to sick benefits, the Local could not enforce a forfeiture of the death benefits for the non-payment of dues and assessments

at a time when it was indebted to him in more than enough to pay all of his obligations to the Local and International. *Kennedy v. Knights of Maccabees,* 100 Wash. 36, 170 Pac. 371; *Conner v. Grand United Order of Oddfellows,* 179 N. C. 494, 102 S. E. 881; *Royal Fraternal Union v. Stahl,* 126 S. W. (Tex. Civ. App.) 920; *Brady v. Coachman's Benevolent Ass'n,* 14 N. Y. Supp. 272. Whether or not there was a waiver, entitling him to sick benefits, is the determinative question in the case.

When the appellant paid her husband's dues for the months of August and September and the penalty assessed in January, she had no understanding with responsible officers of the Local that, by doing so, the provisions of the constitution in relation to sick benefits would be waived. It is reasonable to assume that, in making the payment, she was desirous of restoring her husband to such standing as would entitle him to the benefits; but, in making payment, she made no such stipulation.

Apart from sick and death benefits, if the husband was to continue a member of the Local, his dues and assessments would have to be paid. The sick and death benefits were not the principal benefits accruing to her husband from membership in the Local. His right to work at his trade was dependent on good standing in the Local, and, as the business agent of the Local testified, he could have been put off his job for default in payment of his dues and assessments. While Mix was seriously stricken, there was no certainty that he would not recover sufficiently to return to his employment. The physician's letter forwarded to the Local stated that his illness would last for approximately eight weeks.

The case of *McDonnell v. Local Union 81,* 174 Wash. 147, 24 P. (2d) 447, cited by the appellant, is not con-

trolling here. In that case, the daughter of a deceased member of the union sued to recover death benefits. Upon the father's death, the daughter informed the secretary of the union of the fact, and was told that her father was in arrears for his dues and, for that reason, she was not entitled to any death benefit; but that, in view of the fact that the local union had paid the father's per capita tax to the national, if she would pay the local union the amount of his delinquent dues, he, the secretary, would endeavor to secure the death benefit from the national organization and would take up a subscription from the members of the union for her benefit. On this assurance, the daughter paid the local union the amount of the delinquent dues, and payment was recorded in her pass book. The local union made a certificate to the national organization to the effect that McDonnell was dead and his beneficiary entitled to the insurance benefits of the organization.

The local union had paid the per capita tax due to the national each month for McDonnell, and the money received from the daughter was paid into the local treasury to reimburse it for the per capita tax paid to the national and, also, for monthly dues owing to the local. Thus, the payment made by the daughter, after her father's death, was accepted by the local as having reference solely to death benefit. As McDonnell was dead, there could have been no other purpose in paying the dues.

Here, so long as Mix lived, with the possibility of returning to work again, there was a dual benefit accruing from the payment of his dues: First, a job as a member of the Local; and, second, the receipt of sick and death benefits under the provisions of the constitution. His standing with the Local was such, by reason of delinquency, that he could be deprived not only of

his sick and death benefits, but also of his job, as his employer was under contract with the union. That the Local accepted his delinquent financial obligations in order to make him eligible to work, should not, standing alone, be held a waiver of the provisions of its constitution with respect to sick and death benefits.

As there was no waiver, the Local owed Mix no duty to remit his dues or pay the per capita to the International. As we have seen, the trial court found that the remittances to the International for October and November were made through inadvertence.

The judgment is affirmed.

HOLCOMB, MAIN, SIMPSON, and MILLARD, JJ., concur.