## ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. CAMPBELL.

### No. 9557.

Circuit Court of Appeals, Ninth Circuit.

Nov. 23, 1940.

Skeel, McKelvy, Henke, Evenson & Uhl-mann, of Seattle, Wash., for appellant.

Jones & Bronson and Wheeler Grey, all of Seattle, Wash., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge

The suit is on a policy of accident insurance. From a verdict and judgment in favor of the beneficiary the insurer appeals.

Appellant is a fraternal benefit association incorporated in Ohio and authorized to do business in the state of Washington. The insured, Robert H. Campbell, became a member of the local council of the order at Seattle in 1920, at which time a certificate of insurance was issued to him.

The order is governed by a Supreme Council. It has two types of membership, one being for fraternal purposes only, the other including in addition protection against accidental injury or death. The constitution and by-laws effective at the time of insured's death in 1938[1] provided for an annual assessment of $16 against insured members. The dues of the local council, amounting to $1 per quarter, were required to be paid concurrently with the insurance dues. The insured paid his assessments quarterly.

It was provided by the governing laws of the order and by the contract of insurance that any member who failed to pay the assessments on or before their due date automatically became delinquent. The member could restore himself to good standing by paying the delinquent assessment within 30 days of the date of the default, and thereafter be entitled fully to participate in the benefits provided in the insurance contract; but restoration to good standing did not entitle the member or his beneficiary to insurance benefits on account of injury or death occurring while the member was in default.

Should a delinquent member fail to pay the assessment within 30 days after the date of delinquency, the secretary-treasurer of his local council was required immediately to suspend him and to notify the Supreme secretary of such suspension. Failure to suspend any delinquent member "shall not constitute nor be deemed a waiver of the forfeiture * * *, and the officer so failing to suspend may be removed by the Supreme Counselor." Upon suspension of the member his certificate of insurance was deemed void without the necessity of a formal record of cancellation. Subject to the approval of the Supreme Executive Committee, a suspended member might obtain reinstatement within 90 days of his suspension by certifying to his continued good health and by complying with other terms imposed. If a suspended member failed to apply for reinstatement within 90 days, but did so thereafter, his application was required first to be acted upon by the local council, where reinstatement could be prevented by two adverse ballots.

During the more than eighteen years his certificate was in force Campbell had paid 144 installments of dues and assessments. Fifty-one of these were paid after they were due, the periods of default ranging from 8 to 128 days. Twenty-seven of the delin-

---

[1] The governing laws of the organization effective during the greater portion of the time insured was a member differed somewhat from those in effect at the time of insured's death, but the differences are not material to the decision of the case.

quent installments were paid more than 30 days after they were due. In each of the 51 instances of delinquency the payments were retained. The insured was never formally suspended from membership in the order by reason of default. His certificate of insurance was not treated as cancelled, nor was he ever required to certify to his continued good health, or to submit an application for reinstatement to the Supreme Committee or to his local council.

The insured was accidentally drowned on July 12, 1938, while on a vacation trip in Oregon. At the time of his death quarterly assessment No. 233 was unpaid. This assessment was due and payable on or before June 30, 1938.

It was the practice of the Supreme council to send out notices before the quarterly installments were due. These stated that failure to pay the installment within the time designated would invalidate the insurance. The Supreme council published a magazine which was mailed to each member. This magazine always carried a notice showing what installment was last called and when the due date expired. Appellant produced as exhibits issues of a monthly magazine published by the local council and called the "Tickler". These customarily carried a similar notice.

It had long been the practice of the secretary-treasurer of the local council to send to delinquent members what he termed a "courtesy" notice. Under date of July 5, 1938, such a notice was mailed to insured at his home in Seattle, but he appears to have been absent on his vacation at the time and did not see it. The notice reads as follows:

"Final Notice          Seattle, July 5, 1938
"This Notice Is to Advise You That Assessment No. 233 Expired 6.30. This must be paid at once or you cannot receive any benefits in case of Accident. The Constitution and By-Laws do not permit me to keep members in good standing after any assessment or dues become delinquent. Kindly remit at once and not become suspended as per Constitution and By-Laws. Assessment...$4  Dues...$1  Total...$5"

Appellee relied on this state of facts as showing a waiver of the governing laws of the order and as giving rise to an estoppel on appellant's part to assert forfeiture of the insurance because of non-payment. Entertaining the contrary view, appellant, at the close of the case, moved for a directed verdict. The denial of this motion is the principal ground upon which reversal is asked.

It is argued that appellant was bound to accept payments made within 30 days of delinquency, hence its acceptance of delinquent assessments cannot be construed as a waiver. Further, that the failure to suspend the insured on previous occasions has no bearing on the question of waiver of coverage, since the insured was not at the time of his death subject to suspension. Attention is called to the by-laws providing that the local council and its officers have no power to waive any provision relating to insurance.

The Washington court adheres to the rule that the by-laws of a fraternal insurance society may be waived by a custom acquiesced in by the society. Kennedy v. Supreme Tent, Knights of Maccabees. 100 Wash. 36, 170 P. 371. The acts and declarations evidencing the custom may be those of the society itself or those of its agent. And this is true even though the constitution of the order provides that the collecting officer of the local organization has no power to waive the provisions of the constitution. As a matter of law, the knowledge of the agent is the knowledge of the society. Peterson v. Modern Woodmen of America 127 Wash. 412, 220 P. 809.

Too, it is the rule that the existence of a waiver depends upon the effect of the insurer's actions upon the insured, not upon what the insurer intends. If the conduct of the insurer is such as to lead an ordinarily prudent insured person to believe that his protection continues despite failure to comply strictly with the terms of the contract, the insurer is held to have waived his right to assert a forfeiture. Morgan v. Northwestern National Life Co., 42 Wash. 10, 84 P. 412, 7 Ann.Cas. 382.

Here, the jury might well conclude that Campbell's past experience with the order had been such as to lull him into the belief that his insurance would not be lapsed despite delays in the payment of his assessments. One item of evidence alone required submission of the question of waiver. The proof gave rise to the presumption that the insured had in the past received many notices worded like the one mailed him five days after his last delinquency. That notice, to say the most for it, was highly equivocal in tone and content. It seems to imply that payment "at once" would serve to forestall lapse in coverage—a result contradictory of

the letter of the contract upon which appellant now insists.

Other points are argued by appellant, but they are either inconsequential or they depend upon the application of the theory which we have rejected.

Affirmed.