ROSE C. BONNOT, RESPONDENT, v. GRAND LODGE, BROTHERHOOD OF RAILROAD TRAINMEN, APPELLANT.—81 S. W. (2d) 360.

Kansas City Court of Appeals. January 28, 1935.

*Randolph & Randolph,* and *Nile L. Vermillion* for respondent.

*Stringfellow & Garvey,* and *Irwin & Bushman* for appellant.

REYNOLDS, C.—This is a suit by Rose C. Bonnot, plaintiff, against the defendant upon a certificate issued by it in the nature of a policy of insurance upon the life of her deceased husband, William A. Bonnot, for the sum of $5000 and interest, in which certificate she was named as beneficiary.

The defendant is a voluntary association, operating under the name and style of Grand Lodge Brotherhood of Railroad Trainmen; and its membership is comprised of persons engaged in railroad service. It maintains its chief office at Cleveland, Ohio, in which state its organization appears to have been made under the authority of the laws thereof. It issues certificates to its members in the nature of life insurance policies or contracts upon application therefor, by which it guarantees insurance, upon conditions named or referred to therein, upon the lives of such members, payable upon the death of such members to the beneficiaries named in such certificates. It operates under the lodge system, maintaining a grand lodge as a

governing body and various subordinate lodges in communities throughout many states, including this State.

It appears, however, that it was stipulated upon the trial that the defendant is not and was not licensed by the superintendent of insurance of this State to do such an insurance business in this State, as a fraternal beneficiary association or otherwise.

The certificate sued upon appears to have been issued and delivered to plaintiff's husband, William A. Bonnot, at St. Louis, Missouri, on January 11, 1929, through Pacific Lodge Number 64, a subordinate lodge of the defendant at St. Louis, Missouri, of which said Bonnot was at such time a member. The defendant brotherhood, by its said certificate, agreed to pay to the plaintiff, the beneficiary named in said certificate, upon the death of the said Bonnot, upon conditions set forth or referred to therein, a benefit to the amount set forth and provided to be paid in its constitution, determined upon the classification of such certificate as in such constitution provided. The amount to which plaintiff became entitled upon the death of her husband, under said certificate so classified as of Class G and the provisions of the defendant's constitution, was $5000.

Such certificate recited, among other matters, that it was issued upon condition that the insured, Bonnot, comply with the constitution, general rules, and regulations of the brotherhood, in force or afterwards adopted by it, which, with insured's application, medical examination, and the certificate, constituted the contract between Bonnot and the brotherhood; that he should pay all dues and assessments imposed within the time specified by the constitution and general rules of defendant brotherhood; that, upon failure so to pay Grand or subordinate lodge dues or any general or special assessment levied, he should at once forfeit any and all rights thereunder and the certificate become null and void without notice to him; and that no payment of such dues or receipt thereof by the subordinate lodge or any officer thereof, after such forfeiture, should revive such certificate except by readmission within two calendar months after expulsion, in accordance with the provisions of the constitution and general rules.

The insured, William A. Bonnot, died on February 28, 1932. Following his death, the plaintiff made demand of the defendant brotherhood for payment of the insurance claimed to be due her, which payment was refused; and denial of liability under said certificate and the laws of the defendant brotherhood was thereupon made by the defendant. Thereafter, on August 15, 1933, the plaintiff filed her petition in this cause in the circuit court of Buchanan county, where, upon a trial had before the court and a jury, judgment was recovered by her against the defendant on January 23, 1934, in the

sum of $5565.58. From such judgment, the defendant prosecutes this appeal.

The petition alleges the issuance of the certificate sued upon by defendant at St. Louis, Missouri, to William A. Bonnot, a resident of the State of Missouri, by which and the constitution and by-laws of defendant plaintiff, as the named beneficiary therein, became entitled to the sum of $5000 upon the death of the said William A. Bonnot. It alleged that the said William A. Bonnot died on February 29, 1932; that he had complied with all the requirements of the defendant respecting such certificate upon his part; that plaintiff was entitled to all the benefits conferred by said certificate and to the payment to her of the amount thereof in the sum of $5000; that demand for such payment to her had been made of defendant and refused by it. It prayed judgment for the recovery of such sum with interest.

By its answer, the defendant—after admitting the issuance of the certificate; the plaintiff to be the named beneficiary thereunder; the voluntary character of defendant as an association; its existence under and by virtue of the laws of the State of Ohio, with its principal place of business at Cleveland, Ohio; and its business to be that of insuring the lives of its members, in carrying on which it was engaged in the State of Missouri—specifically denied that the conditions and requirements of the certificate sued upon had been kept and performed by the insured and that the premiums due on said certificate had been fully paid to the date of the insured's death and alleged that, at the time of his death on February 28, 1932, such certificate was not in force and effect. In support of such allegation, it specifically pleaded the terms of said certificate, together with sections 58, 78, 79 of the constitution of the Grand Lodge and sections 120, 128, 129, 141 and 151 of the constitutions of the subordinate lodges. It made denial that it was indebted to plaintiff in any sum whatever under said certificate and made general denial of all other allegations of the petition. The defendant, by its answer, further set up that it was a mutual organization with its membership confined to one class of persons, to-wit, railroad trainmen; that the occupation of such trainmen was hazardous, as defined by the laws of Missouri; that, by the laws of Missouri relating to fraternal benefit associations, it was authorized to do a fraternal insurance business in such State among such trainmen; that it provided ritualistic form of work and maintained lodges and a representative form of government with a constitution, general rules, and regulations for the government of its officers and members; that it has no capital stock and is not operated for profit; that its funds for the payment of expenses and death benefits are derived from the payment of monthly dues and assessments levied against and col-

lected from its members in accordance with the provisions of the constitution of the Grand Lodge and the laws of the subordinate lodges.

The reply was a general denial.

From the evidence in the record, it appears that the insured originally became a member of defendant brotherhood on March 4, 1920, and later, on January 11, 1929, exchanged his original certificate for the one sued upon; that the certificate sued upon was issued and delivered to him in Missouri; that he was at such time a citizen of Missouri; that all dues and assessments paid upon said certificate were paid in the State of Missouri and to the treasurer of Pacific Lodge Number 64 (hereinafter called Pacific Lodge) at St. Louis, Missouri, one J. F. Murray, of which lodge the insured was a member.

Upon the trial below, in presenting her case in chief, the plaintiff, supplementing the facts admitted in the answer, introduced in evidence the certificate sued upon, together with Bonnot's application therefor and his medical examination and certain provisions of the by-laws showing the classification of such certificate as of Class G of the beneficiary department and the amount of the benefit to be paid under such class to be $5000. Plaintiff also made proof of the death of the insured, of notice and demand by her as beneficiary for the payment of said sum of $5000, and of denial made by defendant of liability therefor or for any other sum. She also introduced in evidence an official receipt of date January 24, 1932, for February, in the sum of $8.70, from J. F. Murray, treasurer of Pacific Lodge, in which acknowledgment was made of receiving such sum from her husband for dues and assessments against her deceased husband upon the certificate sued upon.

At the close of plaintiff's case, the defendant requested an instruction for a directed verdict in its favor; and, such instruction being by the court refused, it introduced evidence in its own behalf.

Defendant, upon the trial, introduced as a witness J. F. Murray, treasurer of Pacific Lodge, who gave evidence tending to show that the receipt for the February dues, introduced in evidence by the plaintiff, had never been paid for by plaintiff's deceased husband or other person for him and that the same had never been delivered by him as the local treasurer of Pacific Lodge or otherwise or by any other person authorized by him to do so.

It also appears from the record that plaintiff's deceased husband had, upon numerous occasions during the life of his certificates and his membership in the brotherhood, prior to February 1, 1932, been delinquent in the payment of his dues and assessments (that is, that he had not at all times paid the same within the time required by the by-laws and constitution of defendant brotherhood, but that no entry of expulsion had ever been made against him on account of

any such defaults or forfeiture of his certificate declared) ; that he had frequently been permitted by Murray, the local treasurer, to pay them after they had become due; and that, upon occasions, Murray had advanced them, in which case he was repaid them by plaintiff's deceased husband. In August, 1931, Bonnot paid Murray his dues and assessments for September, 1931. Being out of work at that time, Bonnot asked Murray for a receipt for his October, 1931, dues, stating that he was leaving to look for work. Murray complied with such request and advanced such dues to the defendant brotherhood in his remittance for said month without the same having been paid by Bonnot. Murray testified that thereafter he advanced the dues and assessments for Bonnot upon his request for the months of November and December, 1931, and without request therefor advanced the dues for January, 1932, but that, not having heard from Bonnot, he failed to pay the dues and assessments for February, 1932, for him and that, thereupon, Bonnot stood automatically expelled on February 1, 1932, and was so reported by him to both the defendant and Pacific Lodge.

Other members of Pacific Lodge had also been permitted to become delinquent at times; and Murray had either advanced the dues for them or permitted them to pay the same out of time—that is, during the month for which they were assessed or afterwards, without, in all cases, reporting them as expelled or requiring them to be reinstated.

Murray's report as treasurer, of date February 12, 1932, made both to Pacific Lodge and to the defendant brotherhood, reciting that Bonnot with others stood expelled, appears in evidence. It does not appear that Bonnot had ever been, prior to that time, treated as expelled from the order or reported by Murray as expelled on account of the nonpayment of dues and assessments within time as required by the by-laws, or for any other reason, but was permitted to continue as a member in good standing without reinstatement being required.

Murray had been local treasurer of Pacific Lodge for twenty-five years and, during that period of time, had made a practice as such treasurer of carrying members who were delinquent, including the plaintiff's deceased husband, the insured under the certificate sued upon. That he carried such delinquent members as treasurer and made advancement of dues for them is supported by his own statement in the record.

It would appear from the evidence that Pacific Lodge advanced dues for sick and disabled members upon request. However, other than his statement to such effect, there is nothing in the record affirmatively showing that Murray, at any time, advanced or paid to himself as treasurer dues for delinquent members or showing where

or from what source the remittances therefor by him for the dues of such delinquent members were derived.

Murray was contradicted by plaintiff in rebuttal, through several witnesses, with reference to his statements as to the payment ·of the February dues and the delivery of the receipt therefor. There was no evidence that the insured knew that Murray was claiming to advance his dues or carry him as a personal undertaking or in any manner other than in his official capacity, as he had previously been doing.

The constitution and general rules of the defendant brotherhood in force during the year of 1928 and thereafter until the year 1931 were introduced in evidence, as were likewise the revised constitution and general rules in force during the year 1932 and since the year 1931. The defendant's answer, as originally filed, also appears in evidence, having been offered by the plaintiff in rebuttal.

It would appear that Murray, the local treasurer, was the official collector of the Grand Lodge. He was required by the by-laws to remit money collected for dues to Grand Lodge officers, together with a report of suspensions, on the fifth day of each month. He did not always follow the by-laws in such respect. His report of dues paid and members suspended was the only record the Grand or the local lodges had. Such report, upon examination by Grand Lodge officers, when approved was so endorsed and was returned to the local lodge.

In his lodge record book, Murray would, for some months, make no entry of payments at all; and his entries, when made, never showed the dates upon which payments were received. From the evidence in the record, it is apparent that the Grand Lodge and its officers must have known of the practices of carrying delinquent members. Murray admitted that no notice was given to insured that he had been or was to be suspended, as alleged, for delinquency in the payment of his February dues. Insured was permitted to pay his December, 1928, dues late and to pay his November, 1930, dues late; and Murray received money orders from him for back dues and credited them. One member was permitted to reinstate himself by payment of back dues only.

It appears that, upon the trial, the defendant, by leave of court, amended its answer by striking therefrom the following matter: "—and that the said dues so paid by the said Champ Emmel and Ed Luadzers were paid to an unauthorized agent long after the death of the holder of said certificate and cannot be tendered into this court for the reason that said dues so paid by the said Champ Emmel and Ed Luadzers have never been received or accepted by the brotherhood and are not now in the possession and have never been in the possession of said brotherhood."

It appears from the constitution and the rules and the by-laws that the dues of members of the subordinate lodge are required to be paid monthly in advance before the first day of each month to the treasurer or collector of such lodge and that any member of such lodge failing and refusing to pay his dues and assessments as required stands expelled without any notice or further action and that, at such instant, his certificate becomes void. It also appears that a member expelled for the nonpayment of dues or assessments may be reinstated upon making application upon a form provided by the secretary and treasurer for that purpose and upon payment of all arrears up to the date of such expulsion, including monthly dues and assessments and a reinstatement fee of $1. The application for reinstatement was required to be acted upon in the manner provided by the defendant brotherhood's laws for applications for membership by initiation, except that, when less than two months had elapsed, a medical examination was not necessarily required. All persons so reinstated were required to sign the constitution again. A candidate for admission by initiation was required, in order to be eligible for such admission, to be employed at least one month as a railroad trainman, prior to the date of admission, in train or yard service, within the jurisdiction of the lodge.

It has already been noted that the requirements of the constitution and rules as to the payment of dues within time required was not observed by the local lodge or by Murray, the treasurer, in all instances. On the other hand, the records show that members were allowed to become delinquent and pay their dues out of time or, when advanced by Murray, were allowed to repay him. Likewise, the requirements of the by-laws as to expulsions and reinstatements were not observed with punctiliousness; but the practice was indulged of making no entries of expulsions and of allowing reinstatements of delinquent members upon payment of dues in arrears. From the record, it appears that Murray was agent of the Grand Lodge and its officers for the collection of dues and assessments of the members of Pacific Lodge and was charged with reporting such collections and remitting the same to the Grand Lodge. The matter of expulsions and reinstatements of delinquent members was a matter that appears to have been left in practice to Murray, of which practice, it would further appear, defendant must have had notice.

It is also provided by the constitution and by-laws that, in matters pertaining to the insurance department, neither the subordinate lodges nor the officers thereof should ever act as agents of the Grand Lodge unless designated to such service in writing by the president or the general secretary and treasurer of the brotherhood and that, without such written authority, any and all acts of such subordinate lodges and officers in such behalf should be absolutely

void; that the constitution and general rules of the order and every section thereof should apply to and govern and control all beneficiary certificates and the beneficiaries of all members and that no subordinate lodge or officer or member thereof should have power and authority to waive any provisions thereof; and that no custom or course of conduct in violation of such constitution and by-laws should be deemed a waiver or estoppel upon the part of the brotherhood. The general secretary and treasurer of defendant brotherhood was required to levy assessments monthly against each beneficiary member for the beneficiary fund in stated amounts, according to the class to which said member's certificate belonged. Whether Murray was ever designated in writing as agent for the Grand Lodge does not appear; but it does appear that, as treasurer of the local lodge, he was, by the constitutions and by-laws of defendant and its subordinate lodges, required to collect such assessments monthly and to remit to the general secretary and treasurer of the Grand Lodge for each member who had paid on or before the fifth day of the month for which the same was levied and that he and he alone did make such collections and make such remittances and report of members suspended or expelled.

At the close of the whole evidence, the defendant again renewed its request for an instructed verdict, which was by the court again denied.

The court likewise refused defendant's requested instruction lettered "C," which is as follows:

"The court instructs the jury that any right which plaintiff might have under the policy of insurance sued on was dependent upon the payment of the monthly dues and assessments on or before the first of each month in advance. You are further instructed that if you find and believe from the evidence that W. A. Bonnot had been expelled from his lodge prior to his death on February 28, 1932, for the nonpayment of dues and assessments due and payable February 1, 1932, then plaintiff cannot recover in this case even though you should find and believe from the evidence that after the death of said W. A. Bonnot the plaintiff paid the dues and assessments for February, 1932, or secured a receipt showing such payment."

The cause was submitted to the jury upon plaintiff's instructions Numbers 1, 2, 3, 4, and 5 and defendant's instructions D and E. Instruction 1 for plaintiff is as follows:

"The Court instructs the jury that if you find and believe from the evidence that it had not been the practice of the treasurer of Pacific Lodge No. 64 to exact prompt payment of assessments when due; that he as treasurer had allowed assessments to remain unpaid several days or weeks after they became due, and then accepted payment of the same, without requiring Bonnot to become regularly

reinstated; and if the jury also find and believe from the evidence that the Grand Lodge of defendant at the time knew of this practice of said treasurer, and made no objection thereto, then these are facts, if you so find, from which the jury may find that the defendant waived compliance with the provisions as to punctual payment of assessments.''

Instruction D given for the defendant is as follows:

''The court instructs the jury that the law does not require the Brotherhood of Railroad Trainmen to obtain authority from the Superintendent of Insurance of Missouri to do an insurance business with its members.''

Other pertinent facts than those above set out appear in the record and will be more fully hereinafter referred to if and as occasion may require.

### Opinion.

■ At the outset upon this appeal, defendant bases its attack upon the judgment below upon three alleged errors upon the part of the trial court, assigned to be as follows:

#### I.

In refusing to give Instruction B, a demurrer to the evidence, as requested by the defendant at the close of the case.

#### II.

In giving Instruction 1 in behalf of plaintiff.

#### III.

In refusing to give Instruction C requested by defendant.

These are the sole errors assigned.

■ The plaintiff's case under her pleadings and the evidence pro-ceeds upon the theory, first, that the certificate sued upon was in full force and effect on February 28, 1932, the date of the death of the insured, by reason of the payment of all dues and assessments thereon, including those for the month of February, 1932; second, that the defendant brotherhood, by its course of dealing with respect to the payment of dues and assessments by insured and other members of its order, waived the requirement of prompt payment and is now estopped to set up a forfeiture of the certificate because of nonpayment of dues and assessments within the time required by the by-laws; third, that, by accepting and retaining dues and assessments paid after it knew of default in payment and after it knew of the death of the insured, the defendant brotherhood waived any forfeiture which might have been declared and stands estopped to set

530

up any forfeiture for nonpayment of dues prior to the death of the insured. If, therefore, there is any substantial evidence in the record supporting any of plaintiff's theories for recovery, the defendant's first complaint, relating to the action of the trial court in refusing at the close of the whole evidence to give its requested Instruction B in the nature of a demurrer, must be denied.

■ Defendant's complaint in such regard is based upon its contention, first, that there is no substantial evidence in the record tending to support any of such theories but that, upon the other hand, the evidence shows that the certificate was not in force at the date of the death of the insured on February 28, 1932, and that, under the constitutions and the by-laws of the Grand and subordinate lodges of the defendant brotherhood, the same had lapsed and become forfeited on February 1, 1932, and the insured had become automatically suspended as a member of the defendant brotherhood on said date by reason of his failure to pay the dues and assessments thereon for the month of February, 1932, on or prior to the first day of such month, the date within which the payment of such was required by the laws of defendant brotherhood to be made, and that, upon such suspension, he became ineligible for reinstatement by reason of the fact that he was no longer engaged in service as a railroad trainman and had not been so engaged for several months prior thereto and that he died without reinstatement and that, by reason of all such, defendant is not liable to plaintiff under such certificate; second, that, at the date of his death, insured had been expelled from the order on account of nonpayment of dues and his expulsion had been entered of record in the local lodge by the treasurer thereof and had been so reported by him to the Grand Lodge; and, third, that, under such circumstances, the certificate could not, after the death of the insured, be revived.

■ In determining the question whether there is any substantial evidence in the record tending to support plaintiff's case upon any theory advanced, we are required to view the evidence in its light most favorable to plaintiff, and, where substantial, to accept as true that which supports her contentions, giving to the same all reasonable inferences that may be drawn therefrom.

■ An examination of the record reveals that there is ample and substantial evidence tending to show that the certificate sued upon was in full force and effect at the date of the death of the insured described therein, on the twenty-eighth day of February, 1932.

■ The official receipt of Pacific Lodge of date January 24, 1932, signed by J. F. Murray, the treasurer thereof, acknowledging the payment by W. A. Bonnot, the insured, of $8.70 for his dues for February, appears introduced in evidence upon the trial, by the

plaintiff in her case in chief. It is true that there is no evidence that this receipt was delivered by Murray or by any one authorized by him to do so until June, 1932, some months subsequent to the death of Bonnot; and it is true that the delivery thereof at such time is controverted and that there is a conflict in the evidence as to whether he, at such time, delivered such receipt or authorized its delivery. However, there is substantial evidence from which the jury was authorized to find, notwithstanding Murray's denial, that it was delivered by Murray's daughter, upon Murray's direction, to one Luadzers, representing the plaintiff.

■ There is evidence in the record sufficient to show that Murray as treasurer had, at times, advanced dues for Bonnot to prevent forfeiture of his certificate and to keep him in good standing in the order and that Bonnot was accustomed to reimburse him therefor afterwards; that such practices were also indulged with respect to other members; that he had advanced the dues for Bonnot for October, November, December, and January previous and that Murray had not been reimbursed for the November, December, and January dues; that, upon the date of Bonnot's death, one Luadzers, a former member of Pacific Lodge, in behalf of plaintiff, called upon Murray and advised him of Bonnot's death earlier in the day and made inquiry if Bonnot was in good standing in the order. Upon being assured by Murray that he was, Luadzers stated that plaintiff desired to reimburse him for the February dues at that time and offered to reimburse him for the same. Murray declined to receive the same unless he was also reimbursed for the dues advanced for November, December, and January, for which, he stated, he had not been reimbursed. Luadzers being unable to comply with the request at such time, the matter was left open. In June, Luadzers, in plaintiff's behalf, again took the matter up with Murray and called him over the telephone from Jefferson City, again inquiring if Bonnot was in good standing at the time of his death, and was again assured by Murray that he was. Luadzers thereupon made inquiry as to the amount necessary to reimburse him for all dues advanced for which he had not been reimbursed and was advised that they amounted to $33.30. Luadzers then advised him that he would come to see him and pay him, possibly the next day. Upon the next day, Luadzers, with one Emmel and others, visited St. Louis and called at Murray's residence to pay him. Murray did not appear to be there at the time. However, Murray's wife and daughter were there; and they were advised by Luadzers that he was the man who had called Mr. Murray the night before about Bonnot's dues and had told him he would be down to pay the dues and that, being there, he would like to pay them. The daughter called Murray and advised him that Luadzers

from Jefferson City was there and wanted to pay Bonnot's trainmen dues. He told her it was all right. She also inquired as to the amount owing and was told by him that it was $33.30. Thereupon, she took the four receipts from a bill fold (being for the months of November and December, 1931, and for January and February, 1932, aggregating $33.30) which she delivered to Luadzers and for which he, at the time, paid her $33.30; and he left. Immediately upon Murray's return home, his daughter advised him of what had been done and' gave him the $33.30. She told him that she had given Luadzers the receipts—four of them—and he knew that the receipt for February was one of the four delivered. He made no complaint to Mrs. Bonnot or other person about it. No demand was made upon her or other person for the surrender of the receipt, and no offer to return the money paid or any part thereof was ever made to her or other person for her. No claim was ever made to her or other person for her that the February receipt had been delivered through a mistake.

■ It is true that Murray denied, when a witness, that he had ever advanced the February dues for Bonnot or that Bonnot had ever paid them to him; but there was substantial evidence contradictory of Murray from which the jury, notwithstanding his denial, was authorized to find that he had advanced such February dues for Bonnot at the time the receipt was dated and that such dues were included in his collections for February.

In such state of the record, it clearly became a question for the' jury whether or not the payment of such dues had been made and whether the receipt recited the truth about payment.

If the payment was actually made, it is immaterial by whom made. [Reid v. Brotherhood of Railroad Trainmen (Mo. App.), 232 S. W. 185.] A receipt is *prima facie* evidence of payment and other facts stated therein. [Anderson v. Cole, 234 Mo. 1, 136 S. W. 395; Goodman v. Griffith, 155 Mo. App. 574, 134 S. W. 1051.]

True, when a witness, Murray denied making such statements above attributed to him; and whether he did make them or not became a question for the jury. Plaintiff's evidence as to whether the payment of the dues for February had actually been made, as stated in the receipt of January 24, 1932, by Bonnot or Murray for him and of the delivery by Murray of the receipt therefor was sufficient to take the case to the jury. Upon the whole, under the evidence, the plaintiff made a submissible case upon the question as to the payment of dues and as to whether her deceased husband was a member of defendant brotherhood in good standing on the date of his death and as to whether the certificate sued upon was at such time in full force and effect.

■ Likewise, we are of the opinion that there was sufficient evidence

in the record for the submission of plaintiff's case upon plaintiff's theory of waiver and estoppel.

The law will not permit an insurance company, even though a fraternal mutual, to accept dues or premiums from its members, as if the insurance was in force, and then refuse payment on the ground that the failure to pay promptly forfeited the insurance. [Watkins v. Brotherhood of American Yeomen, 188 Mo. App. 626, 176 S. W. 516.]

If the company desires to hold the members to a strict observance of the by-laws when it is called upon to pay, it must observe them itself when the money is coming in. [Watkins v. Brotherhood of American Yeomen, supra.]

It is a well-settled rule that the doctrine of waiver by acts and conduct is applicable to fraternal societies as well as to regular insurance companies. In fact, it is applicable to all conditions and contracts which may be assumed to have been waived by a long continued course of conduct between the parties themselves. [Zahm v. Royal Fraternal Union of St. Louis, 154 Mo. App. 70, 133 S. W. 374; Wacker v. Life & Accident Ins. Co. of Nashville, Tenn., 201 Mo. App. 586, 213 S. W. 869; Watkins v. Brotherhood of American Yeomen, supra; McMahon v. Supreme Tent Knights of Maccabees of the World, 151 Mo. 522, 52 S. W. 384.]

The facts in the record tend to show that the defendant brotherhood not only waived prompt payment of premiums by plaintiff's husband upon the certificate sued upon, but that such course was pursued with reference to many other members who were allowed to become delinquent and to make payment of dues out of time and of whom no reinstatement was required. Whether or not the plaintiff's husband knew of such course of dealing by the defendant with respect to other members is immaterial. If the evidence is sufficient to establish the waiver against the defendant brotherhood, it is unnecessary that the deceased insured should have known of it. If such knowledge were necessary, however, it is a matter easily inferable from the facts in the record that every member must have known of defendant's methods and course of business in such respect and its general policy in reference thereto. [Watkins v. Brotherhood of American Yeomen, supra.]

There is ample evidence from which the jury could find that the defendant brotherhood itself knew of the manner in which the business was being carried on by Pacific Lodge under the local treasurer thereof with respect to the allowing of dues to become delinquent, to advancements thereof by the treasurer, and to reinstatements. It is inconceivable that a local treasurer could repeatedly report the payment of a member's dues in arrears and the brotherhood

534

not know of such delinquency and nonobservance of the by-laws. In the instant case, it is shown that, for years, Murray, the local treasurer, made monthly reports to the Grand Lodge of the roll of membership of Pacific Lodge and the payment of dues without showing the dates of such payments and whether such were made within the time required by the by-laws or otherwise and that such reports were approved by the officers of Grand Lodge and returned to Pacific Lodge with such approval endorsed thereon. [Watkins v. Brotherhood of American Yeomen, supra.]

 Notwithstanding its by-laws providing that no officer of a local lodge could become its agent without its designation as such in writing, defendant made the local treasurer its sole collector of all dues and assessments to it from the members of the subordinate lodge with the added duty of reporting and forwarding such collections to it within a stated period, without requiring him, in view of its by-laws, to furnish in such report the time and dates of such payments; and, by virtue of his course of dealing as treasurer with the members of Pacific Lodge and with the officers of defendant's Grand Lodge, he became and acted as the agent of defendant brotherhood in such matters. [McMahon v. Supreme Tent Knights of Maccabees of the World, supra; Andre v. Modern Woodmen of America, 102 Mo. App. 377, 76 S. W. 710.]

 Where a fraternal beneficiary association leaves the time and manner of collecting dues and assessments so entirely within the control of the treasurers of its local societies and its subordinate lodges as to be unable to know whether dues are being paid promptly or not, then, by its own methods, it has put the local treasurers in its very place and stead, regardless of whether they might be so considered under other conditions or not. [Watkins v. Brotherhood of American Yeomen, supra.]

 From the testimony of Murray upon the trial and the facts disclosed thereby, it appears that he was the agent of the defendant brotherhood in all matters relating to the collection and payment of dues, the report of collections made and from whom made, remittances therefor, entries of expulsion on account of nonpayment, and to reinstatements as made. If he failed to make an entry of expulsion where the member stood delinquent, the member was carried as in good standing. His books showing his transactions were open to the inspection of the Grand Lodge at any time and of its members and officers. These frequently visited Pacific Lodge and, when present, presided for the session and took part in the discussions upon the floor and knew of the course of business therein. Murray made regular monthly reports to the officers of the Grand Lodge, showing the roster of membership, the payment of dues, and the amount

thereof, but never gave the dates of payments. These reports frequently failed to show payment of dues by members against whom no entry of expulsion appeared and who were nevertheless carried as in good standing. When payment was advanced by Murray, no entry of payment was made until he was reimbursed, when payment was then entered as made by the member. Sometimes such entry would show the payment of more than one month's dues. The officers of Grand Lodge approved such reports and, with full knowledge of the import thereof, accepted remittances from Murray for them. An auditing committee examined the books as kept by Murray, together with his reports to the Grand Lodge. Such committees frequently called for explanations, which Murray made. Whether such explanations were communicated to Grand Lodge does not appear. The Grand Lodge always accepted Murray's action with respect to entries of expulsion and reinstatements. In his twenty-five years of experience as treasurer, no objection was made by it or its officers to his actions in such regard. If he made any entry of expulsion, it was accepted without protest. If he made no such entry, even though the member was in default, the member was continued in good standing and so treated by Grand Lodge without protest. The matters of prompt payment of dues, of acceptance of dues out of time, of the advancement of dues, of entries of expulsion, of the continuance of members in good standing although in default were left entirely to Murray. The Grand Lodge was not interested so long as Murray remitted sufficient funds monthly to cover the dues of members against whom no entry of expulsion appeared, whether in arrears in the payment of their dues to the local treasurer or not. Murray says he supposed that the Grand Lodge and its officers knew of his manner of conducting the affairs of his office. From the record, it must have known.

■ . The record shows that Vice-President McQuaid of the Grand Lodge frequently was a visitor at Pacific Lodge and presided; that he entered into discussions from the floor of such lodge and made addresses, in one of which (at which Bonnot was present) he exhorted the lodge and its members to aid and assist members thereof in need of aid and assistance to prevent delinquency and to continue them as members of the order by helping them along. The effect of the approval by a member of the Grand Lodge of a custom in derogation of its by-laws is to say to the members that the Grand Lodge encourages the benevolent practice of the local lodge in preventing forfeiture by giving aid from its treasury to its members who require such aid and assistance. Such approval says in substance, ''You need not fear a forfeiture if you continue in the practice of delinquency in the payment of your premiums.''

In such statements and practices are found all of the essential elements of waiver. The course of dealing of the subordinate lodge becomes that of the Grand Lodge, upon which the policy or certificate holder has a right to rely, upon the supposition that he will not be summarily deprived of the right to benefit by such course without notice. [Burke v. Grand Lodge A. O. U. W of Mo., 136 Mo. App. 450, 118 S. W. 493.]

Besides, the practice of a subordinate lodge is under the supervision and control of the Grand Lodge. It may interdict a wrongful custom. It would be inequitable that it should receive the benefits of a custom in derogation of its laws and yet be permitted to repudiate the obligations resulting therefrom.

█ It has often been held that prompt payment of dues may be waived by acceptance of the same out of time, although it is provided in the constitution and by-laws in question that, if not paid within the time required by such by-laws, the policy or certificate will be forfeited. Such prompt payment may be waived where the practice of accepting such payment out of time is indulged by the subordinate lodges and their officers and knowledge of such practice is brought to the Grand Lodge and its officers and no steps are thereupon taken by the Grand Lodge or its officers to prevent such practice, even though the by-laws further provide that the local lodge or the officers thereof have no authority to waive such by-laws in such respect and even though they further provide that no officer of the Grand Lodge has such authority. In such cases, the practices and the approval thereof by the Grand Lodge and its officers control the constitution and by-laws of the order and amount to a waiver of the strict requirements of the constitution and by-laws. [Burke v. Grand Lodge A. O. U. W. of Mo., supra; McMahon v. Supreme Tent Knights of Maccabees of the World, supra; Andre v. Modern Woodmen of America, supra; James v. Mutual Reserve Fund Life Ass'n, 148 Mo. 1, 49 S. W. 978; Cline v. Sovereign Camp, Woodmen of the World, 111 Mo. App. 601, 86 S. W. 501.]

Where such practices have prevailed, they cannot be discontinued and no longer followed without notice thereof to the policy or certificate holders indulged. [McMahon v. Supreme Tent Knights of Maccabees of the World, supra; Burke v. Grand Lodge, A. O. U. W. of Mo., supra.]

That such practices were indulged with reference to insured Bonnot and that his dues were either advanced by Murray as treasurer or otherwise and that reimbursement therefor was afterwards accepted by Murray or payment thereof, after due and out of time, was permitted to be made by Bonnot, all fully appear from the evi-

dence of Murray in the record. That he, in the same manner, indulged and carried other members likewise appears.

Upon the trial, he was asked the following questions and gave the following answers:

"Q. State whether or not you, as treasurer for the lodge, have advanced money for different members of the lodge at their request? A. I have on several occasions.

"Q. Did you do that for W. A. Bonnot at any time? A. I did.

"Q. What months did you advance for him? A. 1932, I advanced October, November, December and January of 1933."

These dates he afterward corrected, as November and December, 1931, and January, 1932.

True, he also stated that he made such advancements personally. The jury had both statements. If material that he should have so advanced the same as treasurer, the jury had his statement to such effect; and it was within its province to accept the same as true, regardless of his further statement that he made them personally. There is ample evidence in the record, from Murray's further testimony, that he not only advanced such dues for October, November, and December, 1931, and for January, 1932, but that he had frequently done so for other months, previously thereto, through a period of time, and had afterwards been reimbursed by Bonnot. Not only so, but there is ample evidence that, on numerous occasions, he had accepted payment of dues and assessments from Bonnot out of time when Bonnot was in default and had never entered .or reported him as expelled by reason of his default. Murray stated that he had carried him several times and that he had helped other fellows the same way.

It appears from the testimony of Murray in the record that, in August, 1931, Bonnot had been laid off from work and was out of employment; that, during such month, he paid his dues for September and, at the time that he made such payment, stated that he was leaving to look for work and asked Murray to give him a receipt for the dues for October, which Murray did; that, upon Bonnot's request, he advanced his dues for November and December, 1931, and, without having heard from him or having had any request from him that he do so, he advanced his dues for January, 1932. However, he stated that, when February 1, 1932, arrived, he did not follow the same course with respect to the February dues as the January dues but that, still having failed at such time to hear from Bonnot, he ". . . cut him out . . . pulled the pin on him." That is, he entered him as expelled for failure to pay dues, without notice, and so reported him on February 12 to both Pacific and Grand Lodges. He stated that he never gave Bonnot any notice that he did

not intend to advance his February dues or that Bonnot would no longer be permitted to pay out of time. The record does not disclose that he made any effort to locate or find Bonnot for such purpose.

■ The Grand Lodge of defendant brotherhood, under the circumstances recited in the record, must be held to have known of the practices of Murray as treasurer and, likewise, the practices of Pacific Lodge with reference to the payment of dues by the members thereof after becoming delinquent, without reinstatements, and of the advancement thereof by Murray, on occasions, to prevent delinquency, including dealings with Bonnot; and it must be held to have approved the same. His expulsion and entry thereof upon the record were therefore unauthorized and were of no effect, the defendant having, through its Grand Lodge and the officers thereof, waived the strict requirements of the constitution and by-laws of the order with respect to prompt payment and other allied matters.

No notice was given to Bonnot of any intended discontinuance on February 1, 1932, of the practices of the order with respect to the advancements by the local treasurer for him or the acceptance of dues out of time from him or from other members. Defendant was effectually estopped from asserting a forfeiture of his certificate at such time under the facts in the record. [Burke v. Grand Lodge, A. O. U. W. of Mo., supra.] It is not a question of the revival of Bonnot's certificate after his death. No such issue appears involved. The question is whether defendant can, under the circumstances, be heard to contend that it was not in force at his death and now assert or claim a forfeiture.

■ Plaintiff contends that the certificate was in full force and effect at the date of Bonnot's death, that it had never lapsed. The fact that the last premium was received after death, if true, is immaterial if defendant, by its conduct, laid the foundation therefor. This, we have found upon the record, it did. It stands effectually estopped, by reason of its conduct in the premises, to deny that the certificate was in force at the date of Bonnot's death. Either Murray, its agent, with full knowledge of Bonnot's death, accepted and retained payment of the February dues; or he allowed himself to be reimbursed for the former payment thereof made by him and delivered the official receipt of the order for the same. The money paid him has never been offered or tendered back to plaintiff or any one for her. There was no fraud worked upon Murray or defendant.

It is stated in 45 C. J. 133, section 110, as follows: "The society may so conduct itself, even after a member's death, as to preclude it, on the ground of estoppel or waiver, from avoiding the contract or declaring a forfeiture because of acts or omissions of the member in his lifetime." It there cites the case of Keys v. National Coun-

cil, Knights and Ladies of Security, 174 Mo. App. 671, 161 S. W. 345, as authority supporting its proposition.

■ Murray's acts in receiving and retaining the money paid him by Luadzers, acting in plaintiff's behalf, after Bonnot's death, smack of waiver of any claim of forfeiture which might have been made by reason of acts or omissions on Bonnot's part, if any, during his lifetime. [Wright v. Metropolitan Life Insurance Company, 204 Mo. App. 124, l. c. 132, 221 S. W. 383; Davis v. National Council of Knights and Ladies of Security, 196 Mo. App. 485, 196 S. W. 97; Jaggi v. Prudential Insurance Company of America, 191 Mo. App. 384, 177 S. W. 1064; Wacker v. Life & Accident Insurance Company of Nashville, Tenn., supra; Watkins v. Brotherhood of American Yeomen, supra; Andrus v. Fidelity Mutual Life Insurance Association, 168 Mo. 151, l. c. 165, 67 S. W. 582.]

■ It is contended by defendant that there is no substantial evidence in the record of a waiver of any nature whatever; that no knowledge of any practice or practices of Murray, the treasurer of Pacific Lodge, contradictory to the constitution and by-laws, if any, was shown upon the part of the defendant brotherhood, its Grand Lodge, or any officer of the Grand Lodge. It is true that mere unauthorized practice by the local treasurer, as such, as does not conform strictly to the written law of the order is not sufficient to create a waiver, unless knowledge of such practice is brought home to the Grand Lodge or to its officers and approval, tacit or otherwise, thereof shown. The local treasurer, under the law, may not by his practice make a waiver. The waiver can only be made by the Grand Lodge or its officers, upon notice of the local treasurer's practice and approval thereof, direct or otherwise. [Davis v. National Council of Knights & Ladies of Security, supra, l. c. 489 et seq.]

There is, however, ample evidence in the record to show not only the unauthorized practice of the local treasurer in derogation of the laws of defendant brotherhood but knowledge of such practice by the Grand Lodge and various of its officers and of their approval of such practice by the acquiescence of the Grand Lodge and its officers and otherwise, as hereinbefore clearly indicated.

■ It is contended by defendant that the practice of Murray, the local treasurer, was not in derogation of the constitution and by-laws of defendant brotherhood but, upon the contrary, was in conformity with and authorized by such constitution and by-laws; that the facts in this case are of the same nature and like character as those found in the cases of Smith v. Sovereign Camp of Woodmen of the World, 179 Mo. 119, 77 S. W. 862; Harvey v. Grand Lodge, A. O. U. W., 50 Mo. App. 472, l. c. 478-479; Crawford v. North American Union, 193 Mo. App. 443, 182 S. W. 1043, and other similar cases;

and that its disposition is therefore to be controlled by the disposition made of those cases, rather than by that made of the cases of McMahon v. Supreme Tent Knights of Maccabees of the World, supra; Burke v. Grand Lodge, A. O. U. W. of Mo., supra; Wacker v. Life & Accident Insurance Company of Nashville, Tenn., supra; Watkins v. Brotherhood of American Yeomen, supra; State ex rel. Security Benefit Association v. Cox (Mo.), 9 S. W. (2d) 953. However, we think that there were distinguishing facts in the cases cited and relied upon by defendant which, in part, controlled the disposition thereof and which do not exist in the instant case and that the facts in the instant case bring it clearly within the rules announced in Burke v. Grand Lodge, A. O. U. W. of Missouri; McMahon v. Supreme Tent Knights of Maccabees of the World; Watkins v. Brotherhood of American Yeomen; Wacker v. Life & Accident Insurance Company of Nashville, Tenn.; State ex rel. Security Benefit Association v. Cox, last above cited, and cases of a similar character.

The disposition of the case of Harvey v. Grand Lodge, A. O. U. W., supra, seems to have been influenced by the fact that no knowledge of the practice of the treasurer or local officers of the subordinate lodge in derogation of the laws of the order with respect to the matters relied upon by the plaintiff therein was brought home to the Grand Lodge or the officers thereof. In the instant case, there is evidence showing knowledge of Murray's practice as local treasurer, upon the part of the defendant brotherhood, its Grand Lodge, and the officers thereof.

In the Smith case (Smith v. Sovereign Camp of Woodmen of the World, supra) it was held that, under the facts there, in the record, the practices of the local treasurer of the subordinate lodge with respect to the acceptance of dues were in harmony and compliance with the constitution and by-laws of the defendant therein and not in derogation thereof. Neither were they a modification thereof. In the instant case, the contrary appears.

In the Crawford case (Crawford v. North American Union, supra) the evidence did not show a course of dealing and practice by the subordinate lodge and its officers, with respect to matters relied upon by the plaintiff therein, to be in derogation of the constitution and by-laws of the order. No practice or custom of the defendant therein, with respect to such matters appears to have been shown by the plaintiff. The opinion clearly shows that, if such had been relied upon and shown, the disposition of the case would have been otherwise influenced. In the instant case, the controlling facts are again found to be different.

There was no error made in refusing defendant's requested instruction B.

■ With respect to defendant's second assignment of error, relating to instruction one given by the trial court in behalf of plaintiff, it is only necessary to state that what has been said with respect to plaintiff's theory of waiver and estoppel under defendant's first assignment of error, relating to the refusal of the trial court to give its requested instruction B in the nature of a demurrer at the close of the whole evidence, disposes of its assignment under this head. Under the facts in the record, plaintiff's instruction one was fully authorized and was properly given. The court did not commit error in giving it. Defendant's assignment of error under this head is overruled.

■ The defendant's third assignment of error, relating to the refusal of defendant's requested instruction C, must likewise be denied. It is true that, upon request, defendant is entitled to an instruction upon its theory of the case, provided, however, that such instruction be based upon and submits all material facts in the record where it purports to invite a disposition of the case and a final verdict. The requested instruction did not submit the question of waiver and estoppel raised by the facts in the record but did purport to cover the entire case in the record, and its refusal was properly ruled by the trial court.

We have reviewed defendant's assignments of error as made and presented and do not find any to be well made under the facts as disclosed and found.

■ That, upon the submission of the cause, plaintiff may have abandoned any issue as to the actual payment of the February, 1932, or other dues and assessments by her failure to ask an instruction submitting an issue with respect thereto, as contended by defendant in its reply brief, may or may not be true. With that, we are not concerned upon this appeal. In determining the ruling with respect to the refusal of the requested instruction B, defendant's demurrer, we are required to consider the evidence in the record, at the time the request therefor was made and the demurrer lodged and ruled, as to whether it made a submissible case under any one or more theories. If sufficient therefor, the court below may not be convicted of error in refusing a demurrer, regardless of the course thereafter pursued by plaintiff in requesting a submission of all the issues to which she might have been entitled. Furthermore, the failure to submit by instruction the issue of payment is not found embraced in defendant's assignment of errors in the original brief.

■ The cause below appears to have been well tried. The verdict was for the right party. We find no reversible error in the record. The judgment of the trial court is affirmed. *Campbell, C.,* concurs.

542

PER CURIAM:—The foregoing opinion of Reynolds, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.