262 S.W.2d 318 (1953)
LINK
v.
LINK.
No. 28768.
St. Louis Court of Appeals. Missouri.
November 17, 1953.
*319 Frank Mashak, St. Louis, for appellant.
Sheridan & Goodenough, P. R. Goodenough, Albert E. Hausman, St. Louis, for respondent.
HOUSER, Commissioner.
This is an appeal from an order sustaining a motion to "dismiss or stay" a motion to modify a decree of divorce in respect to the custody of a child.
The mother was granted a divorce on September 30, 1948. The court awarded her $7 per week alimony, custody of the minor child and $8 per week for child support.
On September 6, 1952 the father filed a motion to modify the decree of divorce praying that the alimony award be abated on account of the marriage of the mother and that the custody of the child be changed from the mother to the father.
The mother filed a motion to dismiss (treated at the trial as a motion to stay) the motion to modify on the ground that the father had not paid the mother any alimony; that the father was $945 in arrears on alimony to the date May 3, 1951 when defendant remarried; that the father was in arrears on child support in the sum of $1,430; that plaintiff had paid only $258 of the total amount of $1,688 which had accrued since the order for child support was made. The father replied to the motion to dismiss alleging that from July 20, 1949 to February 15, 1951 the mother and the child lived with him, during which time he supported both of them, and that at all other times the mother had waived alimony. He further denied that he owed anything for child support, excepting three weeks during the steel strike in 1952, and alleged that he had supported the child both while he lived with the mother and afterwards. After a hearing the trial court entered an order sustaining the motion to "dismiss or stay" plaintiff's motion to modify. From that order the father perfected an appeal to this court.
While not challenging the power of the divorce court to deny the ex-husband the right to a hearing on a motion to modify an alimony award until he brings his alimony payments up to date, State ex rel. Couplin v. Hostetter, 344 Mo. 770, 129 S.W.2d 1, appellant urges for his first point that it is not within the power of the divorce court to stay proceedings on a motion to modify the custody provisions of its decree on the ground that movant is in arrears in the payment of the amount awarded for child support. Appellant argues that the paramount concern of the court is the welfare of the child and that the court without delay should brush aside the motion to dismiss or stay, and address itself to the all-important question before it. While it is true that in proceedings of this character technical objections should not be given serious consideration, Sanders v. Sanders, 223 Mo.App. 834, 14 S.W.2d 458, we can find no support for appellant's contention that the court is without jurisdiction to stay the proceedings until the father brings up to date his payments under the child support provisions of the decree. Section 452.070, RSMo 1949, V.A.M.S. authorizes *320 the enforcement of an order of child support by the remedies of execution, sequestration of property, "or by such other lawful ways and means as is according to the practice of the court." A divorce case, and its auxiliary procedures, possesses many of the incidents and qualities of an equitable proceeding and § 452.070, supra, gives the court means for enforcement of its decrees which are not usually incident to money judgments. In State ex rel. Couplin v. Hostetter, supra, the ex-husband sought to modify a divorce judgment with respect to the amount of the monthly alimony payments. It was held that the court had the power, as a price for the decree it offers, to require the party who seeks to modify the court's judgment to submit to equitable terms. Accordingly, we rule that the divorce court in its discretion and in a proper case may impose upon the father, as a price for the maintenance of his motion to modify the custody provisions of a divorce decree, the obligation of paying in full all arrearages due under the child support provisions of the decree. In this connection see In re Elmer's Guardianship, 125 N.J.Eq. 148, 4 A.2d 387; Hoagland v. Hoagland, 67 Idaho 67, 170 P.2d 609; Brown v. Brown, 66 Idaho 625, 165 P.2d 886. It should be emphasized, however, that this rule should not be applied peremptorily or in any case where its application would be contrary to the welfare of the child involved. The power to invoke the rule should be exercised sparingly, and only after sufficient inquiry has been made into the status of the child to satisfy the court that the child's best welfare will not be prejudiced.
Next, appellant asks us to review the evidence de novo and reverse the trial court's order on the ground that it is against the weight of the evidence and is not supported by the credible evidence. Appellant testified in person. He had three corroborating witnesses. Respondent's evidence consisted of her own deposition.
The father's case: On the day the custody of the child was awarded to the mother she turned the child over to the father, instructing him to take the child to the home of its paternal grandmother, stating "You can take care of the child better than I can. I don't want nothing for myself." The father took the child and the two lived with his mother at Coldwater, Missouri, where he supported the child, working "in the timber down there." During this period he not only sent his wife alimony payments according to the court order, but also for the support of the child, under the belief that he was obligated to pay her $8 per week for child support whether the child was with him or not. The child stayed with him at Coldwater from the time of the granting of the divorce in September, 1948 until February, 1949, when the mother took the child to Bragg City, Missouri. She stayed there until July 17, 1949 at which time the child contracted poliomyelitis. The child was taken to St. Anthony's Hospital in St. Louis. The father, expressing concern about his child, visited her at the hospital on week ends. At the instance of the ex-wife the divorced parties went back together, without having been remarried. They lived together from July, 1949 until February, 1951, during which time he supported his ex-wife and the child, who was receiving treatments at the hospital and at home. On February 11, 1951 the mother took the child, separated from the father,
and returned to southwest Missouri. During this separation the father continued to pay her alimony and child support until he received a post card postmarked Gallup, New Mexico, May 3, 1951 in which the mother informed the father that she had remarried. After that time the father no longer sent alimony, but continued to send $8 a week for the support of the child. He next heard from her from a town in California and in telephone conversations with her she first stated that she was and later that she was not married. On September 12, 1951 she wrote from California, "I do not want anything for myself just help me support her * * *." As for letting you have her, never * * *." On March 8, 1952 she wrote from California stating that she was not asking him to help her "for I don't want it, but just so you help me support *321 Bady (the child) * * *. I just got your $10 money order. Duane you don't have to send that much. Eight dollars you are supposed to send her. Myself I want nothing * * *." On July 14, 1952 she wrote to the father stating that he was three weeks behind in the support money. On August 8, 1952 her letter indicated that he owed $48 back money for the time he was off during the steel strike. On August 26, 1952 she wrote to the father informing him that she would not tell him what California hospital the child was in and indicated that he owed for the six weeks he was off during the steel strike. In sending the money by mail the father sometimes used money orders and at other times wrapped up the cash and placed it in an envelope. A next door neighbor and another friend of plaintiff's corroborated the fact that at different times he had sent money in this fashion in amounts of $15 to $25. One of these witnesses saw him mail such payments, addressed to defendant, ten times; the other twice. He produced four money order receipts for $10 each and thirty-six for $8 each. One hundred dollars was recovered by plaintiff in a garnishment proceeding. Plaintiff claimed that he was fully paid up on child support to the date of the hearing and on alimony to the date of defendant's marriage.
The mother's case: The ex-wife testified that her former husband had paid her no sums whatever under the alimony provisions of the decree and denied that he had supported her in any way since the granting of the divorce. She further denied that she had lived with him since that date and although admitting that he had paid some child support money, did not know "just how much he has paid," claiming that he started in 1951 when she "put the garnishment on his wages." From that she received $100 and before that time had received $30. She conceded that following the garnishment, payments for child support had been made but did not have any idea as to the number of payments. She produced twenty-five envelopes, claiming that they were all of the envelopes in which he had sent money. She figured that the total amount of the payments received by mail was $200, and testified that the total amount of all child support received from all sources was $330.
The trial court refused to credit plaintiff with the support of the child from July, 1949 until February, 1951 for the reason that plaintiff was living with defendant in adultery during that period. While the morals of plaintiff (and indeed of defendant) would be a factor to consider in determining the merits of the motion to modify the custody decree, the matter immediately before the court on the motion to dismiss was the question whether plaintiff was in arrears in the payment of child support. If the morals of the parties were a determinative factor on this phase of the case, defendant's motion to dismiss likewise should not have been countenanced, for if there was any adulterous relationship between the parties, defendant necessarily was as guilty as plaintiff in maintaining that relationship. The morals of neither party were in issue on this particular motion, however, and plaintiff is entitled to credit in the computation for the period during which the child lived with him and received support directly from him.
The trial court admitted in evidence certain letters written by defendant to plaintiff, containing damaging admissions against interest, but ruled that the admissions of payment contained therein were "not available" to plaintiff and expressed the view that in order to establish payment plaintiff was required to produce receipts. In taking this view of the matter the trial court was in error. While a receipt is prima facie evidence of payment, Bonnot v. Grand Lodge Brotherhood of Railroad Trainmen, 229 Mo.App. 519, 81 S.W.2d 360, the production of receipts is not the only method of making proof of payment. Payment may be proved by circumstantial as well as by direct evidence and may be established by proof of facts and circumstances from which the inference of payment may be drawn. Dorroh v. Wall, Mo.App., 297 S.W. 705; 70 C.J.S., Payment, § 120, page 333. An admission against interest *322 in the handwriting of the adverse party that the obligor is six weeks in arrears in the making of a series of weekly payments is strong evidence that the payments were no more than six weeks delinquent as of the time the admission was made. The admissions against interest were available to plaintiff and should have been considered by the trial court.
Not only were there admissions against interest indicating payment of substantially all of the sums claimed to be in arrears for child support, but also the letters contained these statements concerning alimony: "I do not want anything for myself. Just help me support her (the daughter) * * *;" "I don't want it (referring to alimony). Myself I want nothing." By these statements defendant voluntarily relinquished and waived her right to alimony. There is, therefore, nothing left for determination except the question whether the ruling of the court sustaining the motion to dismiss or stay may be upheld on the ground that the proof shows that plaintiff was in arrears in his payments.
Our conclusion is that the ruling is not supported by the credible evidence. We believe that appellant made substantially all of the payments ordered to be made for child support. Some of the payments were sent by mail in the form of cash. Appellant so testified and he was amply corroborated in this respect. Payments totaling $330 were proved by the introduction of money order receipts and the admission of defendant's counsel that this sum was received in that manner. As of August 8, 1952, less than thirty days before the filing of the motion to modify, appellant was only $48 in arrears, and that delinquency was due to the steel strike which occurred that summer. Respondent's letters admit this fact. Appellant's testimony is definite, consistent, and credible. It indicates a sincere desire to provide support for his child, under conditions which from his standpoint were vexing and discouraging, to say the least. On the other hand respondent's evidence is indefinite, inconsistent, and in some respects incredible. She denied that she had ever lived with plaintiff after the divorce. A comparison of her signature on the joint application executed when she and her ex-husband applied for the position of apartment managers with her signature in her deposition indicates that they were written by the same person, and there was independent evidence by an agent of the realty company that plaintiff and defendant lived together as husband and wife during this period at 2701 Lafayette Avenue in the City of St. Louis, for two or three months as tenants and thereafter for eight months as apartment managers. She testified under oath that she received only $200 in payments by mail which is contrary to the admissions contained in her letters and documentary evidence which was concededly true. The trial court was not authorized on this evidence to stay the proceedings on the motion to modify.
The Commissioner recommends that the judgment of the circuit court sustaining respondent's motion to dismiss or stay be reversed and the cause remanded to the circuit court.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the Court.
The judgment of the circuit court sustaining respondent's motion to dismiss or stay is, accordingly, reversed and the cause remanded to the circuit court.
BENNICK, P. J., and ANDERSON, J., and HOLMAN, Sp. J., concur.